## Charles H. Reid, Trustee, Appellant, *v.* Arthur Clendenning.

*Partition—Jurisdiction of orphans' court—Conversion.*

Testator by his will devised the residue of his real and personal property to his children excepting a son, share and share alike. By a codicil he gave two full equal shares with his other children to a trustee " to put and place the same out at interest on good real security, and pay over the interest thereof " to the excepted son and a niece. *Held,* that there was no conversion of the shares of the devisees, except, perhaps those given to the trustee, and if there was a conversion as to them the orphans' court had jurisdiction to decree partition on petition of the devisees holding their shares as land.

*Partition—Parties—Trustee.*

Where in partition proceedings it appears that two of the shares are held by a trustee, named as such in the petition, and it also appears that the trustee, as an attorney at law, had conducted the whole proceedings, the fact that he was not served as trustee will not invalidate the proceedings.

*Partition—Trustee—Bidding at sale.*

An executor who has the right to make sale in partition proceedings may, if he secures the appointment of a trustee to make the sale, purchase the land and make a good title to another person; and this is especially the case where the executor is also a trustee of certain shares of the land sold.

Argued Oct. 23, 1899. Appeal, No. 27, Oct. T., 1899, by plaintiff, from decree of C. P. No. 1, Allegheny Co., on bill in equity. Before STERRETT, C. J., GREEN, McCOLLUM, MITCH-ELL, DEAN, FELL and BROWN, JJ. Affirmed.

Bill in equity for an injunction and for a receiver.

The facts appear by the opinion of SLAGLE, P. J., which was as follows:

FINDINGS OF FACT.

The original bill in this case was filed September 20, 1890, by T. Walter Day, trustee of George B. Hay and Elizabeth Hay, versus J. Sharp McDonald, C. J. Hummell, Anna B. Mc-Donald, John R. Harbison, J. M. Guffey and The Southwest Pennsylvania Pipe Line Company. On the same day a motion for a receiver and preliminary injunction was made, which upon hearing was refused. No further action appears to have been taken until May 15, 1897, when an amended bill was filed by which Charles H. Reid, trustee under the will of John Hay, deceased, was substituted as plaintiff and Arthur Clendenning, Emmett Queen, W. S. Guffey and The Forest Oil Company were added as defendants. All the allegations of the original bill were incorporated into the amended bill. Answers were filed and the case put at issue and set down for trial. Upon the hearing there was but little dispute as to the facts, the plaintiff's claim depending largely upon records which were admitted without objection. It will therefore not be necessary to recite the bill and answers, as the questions at issue will sufficiently appear by the statement of facts, as they appeared at the hearing.

The facts, as they appeared by the pleadings and evidence, are as follows : John Hay was seized and possessed inter alia of a tract of land in Aleppo township, Allegheny county, containing about thirty-two acres, upon which he resided at his death. By his will, bearing date December 31, 1867, he gave the mansion house and part of the land described to his wife, Betsey Hay, with the personal property in the house, for life, and after her death he gave the same, " with the residue of all my real and personal estate, to my children, except my son George B. Hay, who I give one hundred dollars, and the balance of his share to his wife and children, etc., and to my niece, Elizabeth Hay, an equal share with my natural children." By a codicil bearing date September 10, 1877, he revoked the devises to George B. Hay and Elizabeth Hay, and instead thereof provided as follows: "I do give, devise and bequeath a full, equal share with my other children, natural and adopted, of my estate unto my executor hereinafter named in trust, that he do and shall put and place the same out at interest on good real security and pay over the interest thereof from time to time when the same shall be got in and received by him unto my said son George B. Hay during all the term of his natural life, and from and immediately after the death of my said son George B. Hay I give, devise and bequeath the share so held in trust unto the children of said George B. Hay then living share and share alike."

A similar provision was made as to the share of Elizabeth Hay, except that after her death it was given to his natural children and their issue. By the same codicil he provided for certain advancements made to some of his children. He appointed T. Walter Day executor. By another codicil bearing date May 20, 1878, he refers to an acre of ground up the run, which by his will he had devised to his brother-in-law, Robert Anderson, which he gives to him for life and after his death to his daughter Anna Oakford. This devise to Anderson does not appear in the will and its exact location is not shown, nor does it appear whether or not it is a part of the tract in dispute.

John Hay died July 22, 1879. His last will and codicils were duly proved and letters testamentary were issued to T. Walter Day, July 28, 1879. The widow, Betsey Hay, died

September 23, 1879. On July 22, 1881, at No. 1, June term, 1881, in the orphans' court—partition docket—the petition of Charles A. Hay and Frank W. Hay, sons and devisees of John Hay, was presented to the court by T. Walter Day as their attorney, praying for partition of the tract of land above mentioned and other real estate of deceased. The petition sets forth substantially the material portions of the will and codicils. It showed the devise to T. Walter Day, executor and trustee, but did not include him in the list of beneficiaries. George B. Hay and Elizabeth Hay were included in the list. On July 2, 1881, an inquest was ordered, returnable August 20, 1881. No special order appears to have been made for notice. On August 20, 1881, the inquisition was returned, finding that the property could not be divided without prejudice to the whole, and appraising the thirty-two acres at $16,000, other lots at $700 and $150 respectively. No return was made by the sheriff as to service except that the parties named "had been severally warned." T. Walter Day, trustee, was not specially named in the writ, nor were the children of George B. Hay, but their interests were shown as set out in the petition. Afterwards, July 8, 1882, by leave of court, the affidavit of T. H. Hunter, sheriff, was filed, showing that service had been made on all parties living in Allegheny county upon their attorney, T. Walter Day, and on all others by advertisement in the Chronicle-Telegraph, and on July 3, 1882, an acknowledgment by Charles A. Hay, Anna E. Oakford and Frank W. Hay, that T. Walter Day was their attorney and that all notices in the case served on him were notices to them. On August 31, 1881, the inquisition was confirmed absolutely and a rule was granted on the heirs, representatives and others interested to accept or refuse the property, or show cause why the same should not be sold. On October 8, 1881, notice of this rule was given by publication in the Evening Chronicle. On November 12, 1881, it appearing that the parties had not been called, on October 8, an alias rule was granted returnable December 21, 1881, at 10 o'clock, A. M. The return of this rule shows that notice was given by publication in the Evening Chronicle. On December 21, 1881, an order of court reciting that notice of the citation had been given "to all parties interested in said estate," and that they had been called and refused to accept, and directing

the property to be sold. On January 26, 1882, a formal order of sale was made and R. W. Miller was appointed trustee to make the same. On April 8, 1882, a return was made by the trustee showing a sale of one lot in the sixth ward, Pittsburg, to Walter Day and the other property unsold for want of a sufficient bid, the highest bid being $7,400. This was confirmed, and on April 18, 1882, an alias order was issued. Upon this a return was made by the trustee showing a sale of one lot of ground to Frank W. Hay for $810, and of the thirty-two acre tract to T. Walter Day for $5,200. Terms of sale one-third cash, the balance in one and two years. These sales were confirmed nisi June 5, 1882, and absolutely on June 28, 1882, and the trustee was directed to execute deeds of conveyance. Upon the same day the trustee acknowledged in open court a deed to T. Walter Day for the tract of thirty-two acres. On July 12, 1882, Day was by order of court authorized to pay the purchase money in full. The trustee filed his account and on the audit the two ninths of the surplusage was appropriated as follows :

| George B. Hay | To be held in trust by T. Walter Day, executor, as per will. | -$341 50 |
| Elizabeth Hay | | 341 50 |

These amounts were paid to Mr. Day in accordance with the decree of court in that case. This ended the proceedings in partition. In the mean time T. Walter Day, July 5, 1882, executed and delivered to Arthur Clendenning, one of the defendants, a mortgage for the payment of $6,000, which Clendenning advanced to him. The mortgage covered the entire thirty-two acres. By deed of December 5, 1883, Day conveyed to George Kress the mansion house and four acres of land for the consideration of $7,000—$3,500 in cash and the balance, $3,500, secured by mortgage. He paid on account of his mortgage to Clendenning $2,500, and assigned to him the mortgage of Kress for $3,500, and Clendenning released the lien of his mortgage of $6,000 from the part sold to Kress.

On December 5, 1887, T. Walter Day filed his accounts as trustee of George B. Hay, and Elizabeth Hay, in which he charged himself in each inter alia with the sum of $341.56 received from R. W. Miller, in accordance with the decree of distribution. Exceptions were filed by George B. Hay and

Elizabeth Hay to these accounts. They were fully heard and resulted in a decree dated March 7, 1888, by which he was charged with the entire amount of money received from Clendenning, $6,000, and surcharged with the difference between his bid, $5,200, and that sum, viz : $800, and also surcharged with a balance of the Kress mortgage, $502.95, with interest, one ninth of these amounts being surcharged in each account. The decree further ordered that the sale to Kress be ratified and that Day execute a deed declaring that he held the twenty-eight acres unsold in trust, a note of the decree to be entered in the partition proceedings. This decree was made March 7, 1888. The original bill in this case was filed by T. Walter Day, trustee, September 20, 1890. December 7, 1896, he was discharged as trustee and C. H. Reid was appointed in his place, who, on May 5, 1897, filed the amended bill.

As before stated, on July 5, 1882, T. Walter Day executed his mortgage to Arthur Clendenning for $6,000. On December 5, 1883, he sold four acres of the land to George Kress for $7,000, and received cash $3,500 and a mortgage for $3,500. He paid Clendenning on account of his $6,000 mortgage $2,500 and assigned to him the Kress mortgage for $3,500. On May 12, 1884, Day paid to Clendenning $1,800 on account of his mortgage, and Clendenning reassigned the Kress mortgage to Day, who satisfied it of record. Clendenning issued a scire facias upon his mortgage against Day, and on September 4, 1888, recovered judgment by default for $2,038.80. Upon this judgment a levari facias was issued and the property, excluding that conveyed to Kress, was sold to Clendenning by the sheriff, who executed and delivered a deed for the same to him, which was duly acknowledged. On February 6, 1890, Clendenning conveyed the property to J. Sharp McDonald by deed. All the other defendants claim under him. None of the defendants has any present interest in the land except C. J. Hummell and J. R. Harbison, owners of the fee, and The Forest Oil Company, which has a lease of the same for oil and gas production.

The plaintiff alleges that T. Walter Day paid to Arthur Clendenning $2,500 cash, and assigned to him the Kress mortgage for $3,500 in full payment of his mortgage of $6,000, and when the $3,500 was paid by Kress the mortgage was satisfied. This allegation is not sustained. On the contrary the Kress mort-

gage was assigned to Clendenning as collateral security, and we further find that upon the reassignment to Day upon payment of $1,800 there is no evidence of any fraudulent purpose or want of good faith on the part of Clendenning. The plaintiff further alleges that at the time Clendenning took the mortgage he knew that "Day held the two ninths of said land as trustee for George B. Hay and Elizabeth Hay, and that said Day was under a legal incapacity to mortgage said land, and that all of the other defendants at the time they severally purchased and leased said land had notice of the deeds, etc., and had notice that two ninths of said tract of land was and is subject to a trust under the will of said John Hay."

We find that none of the defendants had any actual notice of any adverse claim to the land in dispute until the bill in this case was filed, September 20, 1890, and had no constructive notice except such as may arise from the record and conveyances above recited and the possession of Charles A. and George B. Hay.

It appeared in evidence that Charles A. Hay, one of the sons of John Hay, at the time of the proceedings in partition, occupied a small house and about one acre of ground at the upper end of the property, and continues to live there at the present time, and that George B. Hay, another son, some time in 1884, built a small shanty on the river bank, in which he has since lived. It further appeared that Arthur Clendenning did not take actual possession of the land purchased by him, nor did the other defendants until some time in 1890, when some of the defendants commenced to bore for oil and gas. They did not interfere with the occupancy of Charles A. and George B. Hay. George Kress took possession of the mansion house and land purchased by him soon after he bought it, and has occupied the same ever since. A portion of the land in dispute was sold to the Pittsburg, Fort Wayne and Chicago Railway Company, by deed of May 18, 1892, which is now in its possession.

### OPINION OF THE COURT.

Under this state of facts the plaintiff asks (1) that the alleged title to said land as now held by the defendants . . . . be declared null and void as respects your orator's two-ninths interest in said land; (2) that the lease . . . . now held by

The Forest Oil Company be declared null and void as respects your orator's two-ninths interest in said land; (3) that your orator be declared to hold the individual two-ninths interest in said land in trust . . . . free from any claim of the defendants, or any interest therein or claim of right thereto; (4) that defendants be restrained by injunction from issuing and removing from said land oil or gas, etc.; (5) that defendants be required to account to your orator for the oil and gas removed from said land, etc.

The grounds upon which this action is demanded are as follows: First, the estate in the devisees under the will of John Hay was personalty, and therefore the orphans' court did not have jurisdiction to order a partition of the real estate; second, T. Walter Day was not a party to the proceedings as trustee and not named in the notices and decree; third, notices to parties interested were not given as required by law.

In considering the legal questions arising out of the facts stated they may be limited to such as affect the rights of the plaintiff against Arthur Clendenning. The other parties interested in the property are not complaining. The only party to the proceeding is the trustee of the shares of George B. and Elizabeth Hay. If his interest in the land is divested the bill must fall. If Clendenning took a good title as against the trustee and parties represented by him, he conveyed a good title to the other defendants who claim under him. If his title was not good, there was sufficient notice of that fact upon record before his sale to McDonald, as before that conveyance the decrees in the accounts of Day, trustee, were made and noted upon the record of the proceedings in partition, which is in the channel of defendants' title. The first question presented is as to the jurisdiction of the orphans' court to decree partition. If the subject of partition was land in contemplation of law jurisdiction must be conceded. But it is contended that there was an out and out conversion, worked by the will of John Hay, which excluded it: Fahnestock v. Fahnestock, 152 Pa. 56. Assuming that defendants' title turns on conversion, we must inquire what is a proper construction of the will. In Hunt's Appeal, 105 Pa. 141, the requisites to effect conversion of real estate into personalty are stated as follows: "It ought to be settled by this time that in order to work conversion there must

be either (1) a positive direction to sell, or (2) an absolute necessity to sell, or (3) such a blending of real and personal estate by the testator in his will as clearly shows that he intended to create a fund out of both real and personal estate, and to bequeath such fund as money."

In this will there is no direction to sell, but the rules applied in the construction of this power may aid in applying the facts of the case to other modes of working conversion. In Anewalt's Appeal, 42 Pa. 414, the Court says: " To establish a conversion the will must direct it absolutely or out and out, irrespective of all contingencies. The direction to convert must be positive and explicit—it must decisively fix upon the land the quality of money. It must be an imperative direction to sell." In Peterson's Appeal, 88 Pa. 397, it is said: " To work a conversion the direction to sell must be positive, irrespective of all. contingencies and independent of discretion." There are many other cases to the same effect. All cases upon the subject recognize that conversion of real estate is not favored, and in many it is so stated. If, therefore, the direction to convert must be positive and imperative, in the absence of such direction conversion should not be decreed unless the intention is clear or the necessity absolute. As to the third rule for conversion Justice PAXSON, in Lindley's Appeal, 102 Pa. 235, said: " The blending of real and personal estate by a testator in his will is not of much significance unless it clearly appears that he intended thereby to create a fund raised out of both real and personal estate and bequeath said fund as money." If this were not so almost every will would work conversion, as it is usual to dispose of real and personal estate in a single clause making shares of the entire estate. It therefore requires some clear intention to so blend and convert, and this ought to be as distinct and positive as is required in an express direction to sell. No specific mode of expressing such intention has been or can be defined, but where such intention exists the testator would naturally give at least a power to sell. The necessity for such a power to indicate an intention to create a fund from both real and personal estate is suggested by Justice PAXSON in Lindley's Appeal, following the language above quoted. When such a purpose is expressed and a power of sale is given to

carry it into effect, there is some room for holding conversion
was intended, and we find the same idea in the opinion of Jus-
tice McCOLLUM in Fahnestock v. Fahnestock, 152 Pa. 56, in
which he lays special stress upon the existence of the power
to sell. Whether the power to make sale is essential to the
finding of an intention or not, its absence raises a doubt of
the existence of such intention, which it would require clear
expressions to remove. In this will there is no power to sell,
and nothing in the language used which indicates a purpose
to create a fund and bequeath it as money. In the original
will the testator simply gives and devises all of his property,
real and personal, to his children and their representatives in
equal shares. He disposes of all of his property just as he
held it, and the will is in no respect different from ordinary
wills for such a purpose. In the codicil he makes no change
except to give to Mrs. Oakford the Anderson lot, to charge
some of the children with specified advancements, and to
give the two shares of George B. and Elizabeth to T. Walter
Day as trustee, with direction to invest on real security. All
the other children took their shares under the original will
and took it as land. As there was no positive direction and
no expressed purpose to sell the real estate and distribute the
fund realized as money, conversion in this case must depend
upon the necessity to sell to execute the provisions of the will.
As we have seen, such necessity must be absolute. It must
arise out of the scheme of the will and not in administration.
In Hunt's Appeal, 105 Pa. 141, Justice PAXSON said: "If by
reason of depreciation of property, or for other causes, a neces-
sity to sell arose which was not foreseen by the testator, it will
not work a conversion for the obvious reason that a conversion
is always a question of intent." In the provisions of this will
we do not find any necessity for conversion. Aside from the
matter of advancements there is nothing unusual, and ordina-
rily there would be no difficulty in adjusting these. Such
adjustments are usual and necessary incidents to partition:
Caldwell v. Snyder, 178 Pa. 420. In case of actual partition
of real estate differences in interests and claims for advance-
ments are readily adjusted, and in case of sale there is no
more difficulty encountered than there would be in the dis-
tribution of the proceeds of personal property or of money.

So far there is nothing found in the scheme of the will, nor even in executing it which requires a sale of the entire property. It is contended, however, that the intent to create a common fund, and the necessity for sale and consequent conversion, is found in the provisions as to the shares of George B. and Elizabeth Hay, "that the trustee shall put and place the same at interest on good real security and pay over the interest," etc. It must be noted that this provision applies to two shares only. Whether it would require the sale of these two shares after they had been set apart is at least questionable.

But assuming that absolute conversion as to these two shares was in testator's contemplation, want of jurisdiction in the orphans' court to make partition would not necessarily follow. When there is an undoubted conversion for some special purpose, such conversion will not be construed to extend to property not necessary to effect that purpose : Swift's Appeal, 87 Pa. 502. The same principle was applied to partnership real estate in Foster's Appeal, 74 Pa. 391. We have already seen that the devise to the other children was as land, and that there was no difficulty in setting apart the several interests of the devisees, including those given to the trustee. There would therefore be no necessity to sell the whole land in order to carry out the provisions of the will as to these two shares, nor does it indicate an intention that it should be. The sale could be made after separation, or might be effected by the proceedings in partition, as occurred in this case. The shares of those who began the proceedings having been given as land, a right of partition was implied, a right of which they could not be deprived except by a clearly expressed intention or absolute necessity, and the exercise of which would be entirely consistent with the purpose of conversion of the shares given to Day. If then there had been an express power of sale of a several interest and a gift of the proceeds as money, some mode of conveyance would be necessary. But the subjects of the power being an undivided interest in lands from which others had an incidental right of severance proceedings in partition would be a convenient, if not essential, step towards conversion. In Sill v. Blaney, 159 Pa. 264, the Supreme Court held that one tenant in common cannot raise the question of conversion of the shares of the other parties asking for partition, and the con-

verse of the proposition must be true and preclude a party's claim to have a converted interest from raising that question against those having interests in the land as land. But the proceedings in partition having been carried through without objection, and resulting in a sale and distribution of the proceeds, it would be inequitable to permit the parties now to raise objection to the jurisdiction of the court against the title of an innocent purchaser at that sale. Under this will that court had jurisdiction of the persons and the property. If the purpose of the will was effected it is not material by what means it is accomplished. Until sale, conversion is a mere fiction, and the land may be dealt with as land. It was upon this principle that an administrator's sale under the order of the orphans' court was sustained in Horner's Appeal, 56 Pa. 405, in which the Court said, "Equity regards the substance and not the mere form of things," and sustained the proceedings because "in fact there was no conversion, the real estate yet standing, or the existing source from which the interests in the proceeds was to spring, and was viewed as personalty only through the medium of equity;" and upon the same principle a mortgage upon a share in land clearly converted was sustained in Bailey v. Allegheny Nat. Bank, 104 Pa. 425. We therefore find as matter of law that there was no conversion of the shares of the devisees under the will of John Hay, except, perhaps, those given to T. Walter Day as trustee, and if there was a conversion as to them the orphans' court had jurisdiction to decree partition on petition of the devisees holding their share as land.

But it is contended that admitting the jurisdiction of the court, the proceedings in this case were ineffectual to divest the two shares held by T. Walter Day as trustee : (1) because he was not made a party ; (2) because legal notices were not given to the parties interested as required by law ; (3) because the parties were not named in the petition notices and decrees as required by law.

We agree with counsel for plaintiff that the trustee was a necessary party to the proceedings in partition. He was a party. The law requires that all parties in interest shall be named in the petition, but it does not prescribe any special form for so doing. It is sufficient that the names of the par-

ties and their respective interests are shown in the petition, and they thereby are made parties to the proceedings. In this case the petition sets forth the provisions of the will of John Hay, showing the division among his children and that the two shares of George B. Hay and Elizabeth Hay were devised to T. Walter Day in trust. It then gave the names of the children in order to show the number of shares. In this list George B. Hay and Elizabeth Hay were named. But the naming of them did not in any manner affect the previous declaration of title in T. Walter Day, trustee. The title of the several parties having been distinctly set forth, the petition prayed for partition "to and among the representatives of said John Hay in accordance with the provisions of said last will and testament." Every person named in the petition as having an interest in the land was thus made a party to the proceedings, and among them was T. Walter Day, trustee of the shares of George B. and Elizabeth Hay, distinctly named, and his interest clearly shown. We need not inquire whether valid notices were given to other parties than the one representing the interests now claimed by the plaintiff in this case. The other parties are not complaining, and the plaintiff cannot take advantage of any defect in notices to them, if such exist; but we think there are no defects not cured as to them. By the sheriff's returns it appears that in every instance in which notice was required it was given to parties residing in Allegheny county by service upon T. Walter Day, their attorney. It is true that there was no service specially mentioning him as trustee. This was not essential. He was a party to the proceedings, and when a notice was served on him it was good in every capacity in which he appeared. The important fact is knowledge, and he cannot be heard to say that he was informed as attorney but not as a party. Neither law nor equity requires that titles of innocent parties should be stricken down upon such technicality. But aside from this it appears by the record that T. Walter Day, as attorney for Charles A. and Frank W. Hay, presented the petition, had charge of the proceedings, and every important paper in the case was prepared and filed by him. He was actually present at and participated in every stage of the proceedings from the filing of the petition to the taking of his share of the proceeds of the sale upon confirma-

tion of the account of R. W. Miller, the trustee appointed to make sale of the land, which confirmation was made on his motion. A formal appearance of record, and more certainly an actual appearance and participation in legal proceedings, waives all irregularities in process and notices and even want of formal notice: Shriver v. Stephens, 20 Pa. 138; McCormick v. Irwin, 35 Pa. 111. Notice may be waived by a party of record, though he appears in a representative capacity (Johnston's Heirs v. Harvey, 2 P. & W. 82), and notice will be presumed when not inconsistent with the record: Richards v. Rote, 68 Pa. 248; Vensel's Appeal, 77 Pa. 71. Having had control of the whole proceeding and notices therefore presumably made under his immediate direction, it would be absurd to insist that formal notice should have been served on himself. But it is claimed that the proceedings are void because of noncompliance with the Act of April 14, 1835, P. L. 275; Purd. Dig. p. 606, pl. 185, which provides that " in proceedings for partition and valuation of an intestate's real estate the parties interested shall be named in the petition, decrees and notices when known." As we have seen, T. Walter Day, trustee, was named in the petition as a party interested. In the writ of partition the petition was copied at length, and he was thus in like manner named as a party. It is true that he was not named in the published notice, but the notice of inquest appears to have been prepared by him, as it was published under his name as attorney. None of the parties were named in subsequent published notices nor in the orders for sale, etc., but the names of all the parties, including T. Walter Day, trustee, appear in the final account of R. W. Miller, who made the sale, the confirmation of which constitutes the final decree in the case. This act, like all other acts of assembly, must receive a reasonable construction. Its purpose is that no person's rights should be affected without due notice and an opportunity to be heard. It is essential that each person interested be named in the petition in order to make him a party. If he is not so named he will not be bound by the proceedings. If every one interested is so named, then all parties will appear in the petition and writ, but it is not necessary that all the parties be named in the notice to each. It is clearly sufficient that each party be named in the notice to him. The insertion of other names would be useless and

therefore is not essential. The same reason applies to all inter-locutory orders and decrees. In most of these, for instance in an order for sale, it would serve no purpose to name the parties interested. If the persons interested are named in the petition and thus made parties to the proceeding, and receive actual notice of all steps taken as to which notice is required, the purpose of the act is accomplished and the manner in which it is done is immaterial. There is an established principle that where the thing to be done may as well be done after as before the time prescribed, where it is a matter of manner or order or convenience rather than of substance, the courts assume the legislative intent to be directory: Dwarris on Statutes, 222. This is merely applying to the construction of statutes the principle stated in Horner's Appeal, 56 Pa. 405, before quoted, that equity regards the substance, not the form of things. There are many cases to the same effect: Lockhart v. John, 7 Pa. 137; Dixcy v. Laning & Sill, 49 Pa. 143; Meanor v. Hamilton, 27 Pa. 137; Cummisky v. Cummisky, 109 Pa. 1; Cowan's Estate, 184 Pa. 339. We therefore hold that the proceedings in partition in this case were sufficient to divest the interest in the land held by T. Walter Day in trust.

If then the sale had been made to a third party, there can be no question that the purchaser would take the title of all parties to the proceeding, including that held by T. Walter Day as trustee. But it appears that upon sale of the property T. Walter Day became the purchaser. It remains to be considered what title he took, and how the purchaser from him is affected by this fact.

The cases are without number which hold that a trustee cannot buy at his own sale free of the trust, and that he cannot be allowed to make profit out of the trust property. But he did not buy at his own sale. As executor he had the right to make the sale in partition. If he had done so he might have obtained permission from the court to bid. He did not do this, but instead, upon his motion, the court appointed R. W. Miller as trustee to make the sale. This was in accordance with the suggestion of the Supreme Court in the case of Armor v. Cochrane, 66 Pa. 308, and as is there said would give him the right to bid. When this sale was reported to the court and confirmed by it, the purchaser from Day would have the right to assume

that the power to buy has been given or ratified by the court. But assuming that when Day purchased the property he took in trust for the parties he represented as trustee, it does not follow that he did not have the right to sell and convey a good title to a bona fide purchaser. This was not an ordinary sale and purchase of trust property by a trustee upon his own motion. Proceedings were had at the instance of other parties, who had the right to have their shares set apart, or the property sold. The case had proceeded to an order for sale. Such sale would work a conversion of the real estate into money. It might be very important that the trustee should bid upon the property to prevent a sacrifice. If there were no other complications, it is clear that he would take the title of the other parties interested, and their shares would be converted into personalty. We do not see why the same effect would not apply to the shares which he represented as trustee. Even though he should be decreed to hold it in trust he should be held to have it as personal property, with power to sell and account, otherwise the entire proceedings would be nugatory and necessitate a new partition. This is in accordance with the case of Oeslager v. Fisher, 2 Pa. 467, where the Court say, "conveyance to an executor in trust for the estate is a trust for himself representing the estate, and he may convey." If then the trustee had the power to buy and sell again, the right to mortgage was exercisable under the power to sell: Zane v. Kennedy, 73 Pa. 182. Subsequently the orphans' court, in auditing the accounts of T. Walter Day as trustee of George B. and Elizabeth Hay, held that the two-ninths interest purchased by him was held in trust for them. But Clendenning's title must be determined as of the time it accrued. He was affected only by facts appearing of record, and the decree of the court in that case was based upon some facts which did not appear in the proceedings in partition. But as we view the proceedings in auditing the trustee's accounts they are confirmatory of Clendenning's title.

After the proceedings in partition and the mortgage to Clendenning, and a sale of part of the property to George Kress, Day filed his accounts as trustee of George B. and Elizabeth Hay. In each he charged himself with the share of the proceeds of sale in partition, received from R. W. Miller, trustee. George B. and Elizabeth Hay filed exceptions. No question

was raised as to the validity of the mortgage to Clendenning
and the sale to Kress. The court, however, not only sustained
the charge of his portion of the purchase money as reported,
$5,200, but surcharged him with the difference between that
sum and the amount received from Clendenning, $6,000, to wit:
$800, and also the sum of $502, made on the sale to Kress.
The court then expressly ratified the sale to Kress, and, not in
express terms, by implication, ratified the mortgage to Clen-
denning, by charging the trustee with the money received from
him and giving the money to the trustee and the interest to the
life tenants. The decree simply found that Day held the twenty-
eight acres unsold in trust, but recognized the validity of the
mortgage by appropriating the money received on it. But these
proceedings have a further effect. If there were any doubt of
the right of Day to sell the property purchased by him the sale
would not be absolutely void, but is subject to ratification by
the parties beneficially interested: Henderson v. Painter, 7 Pa.
48. Acceptance of Clendenning's money by the trustee, which
he still holds, and acceptance of the interest on it by the ben-
eficiaries, is a clear ratification of the entire transaction. They
cannot have the money and the land also. This clearly excludes
all equity in the trustee and in George B. and Elizabeth Hay.
It is not necessary to consider the effect of these proceedings
on the children of George B. Hay and the other children of
John Hay, to whom the remainder was devised after the death
of George B. and Elizabeth Hay respectively. They are not
parties to the proceedings unless they are represented by the
trustee. If they are represented by him they are barred by his
acts, so far as they were in accordance with law. If they were
not represented by him their rights, if any, must be enforced in
some other proceeding in their own name and right.

In this view of the case it is not necessary to consider the
effect of the possession of Charles A. Hay and George B. Hay.
This possession at most would only be notice of an actual title
in themselves adverse to the defendants. As we have found
that there is no title in them enforceable in this case, even actual
notice by them would be of no avail. But we may say that as
to Charles A. Hay, he was in possession when the petition was
filed. His remaining there would not indicate a claim adverse
to the proceedings instituted by himself. The possession of

George B. Hay was taken after the mortgage to Clendenning. Their possession, therefore, is not inconsistent with Clendenning's title, and the other defendants stand upon it. The prayer of the bill must therefore be refused, and it is ordered that the bill be dismissed at costs of plaintiff. A decree may be drawn accordingly.

The court entered the following decree:

And now, to wit: July 9, 1898, this case came on to be heard on bill, amended bill, answer and replication and testimony, and was argued by counsel, and thereupon after due consideration it is ordered and adjudged that the said bill of complaint be dismissed out of this court, and that the plaintiff pay the costs.

*Error assigned* was the decree of the court.

*Levi Bird Duff*, for appellant.—The court did not adjudge that notice was given according to law, but that notice was given by advertisement, and in effect decreed such notice to be sufficient. The decree was illegal: Vensel's Appeal, 77 Pa. 71.

In order to divest the interest of any person it is necessary that such person be named in the petition, decree and notices: Richards v. Rote, 68 Pa. 248; Thompson v. Stitt, 56 Pa. 156; Sager v. Mead, 164 Pa. 125; Lancaster's Appeal, 111 Pa. 524.

At the time of his purchase Day stood in the relation of trustee to the plaintiffs and was also the attorney in the cause. He could not acquire title against any of the parties: Henry v. Raiman, 25 Pa. 354; Mullen v. Doyle, 147 Pa. 512.

A purchaser is affected with notice of every fact appearing in the line of his title, and of every fact not appearing which is necessary to make a good title: Lessee of Burkart v. Bucher, 2 Binn. 465; McAteer v. McMullen, 2 Pa. 32; Gingrich v. Foltz, 19 Pa. 40; Murphy v. Richardson, 28 Pa. 288; Wilson v. Hart, L. R. 1 Chan. App. Cases, 463; Becker v. Kehr, 49 Pa. 223; Simmons Creek Coal Co. v. Doran, 142 U. S. 417; Hottenstein v. Lerch, 104 Pa. 454.

*J. S. Ferguson*, with him *E. G. Ferguson*, for appellees.—Conveyance to an executor in trust for the estate is a trust for himself representing the estate, and he may convey: Oestlager v. Fisher, 2 Pa. 467; Reed v. Mellor, 122 Pa. 651.

If then the trustee had the power to buy and sell again, the right to mortgage was exercisable under the power to sell. An absolute and unrestricted power to sell includes a power to mortgage : Lancaster v. Dolan, 1 Rawle, 231 ; Zane v. Kennedy, 73 Pa. 182 ; Presbyterian Corporation v. Wallace, 3 Rawle, 109 ; Duval's App., 38 Pa. 118 ; Penna. Life Ins. Co. v. Austin, 42 Pa. 263.

PER CURIAM, October 30, 1899 :

We find no error in this record that requires either reversal or modification of the decree from which this appeal was taken. The findings of fact were fully warranted by the pleadings and evidence, and the conclusions drawn therefrom are substantially correct. All that need be said in support of the decree will be found in the clear and satisfactory opinion of the learned trial judge, and on it the decree is affirmed and appeal dismissed at appellant's costs.