**Edward L. FLANDERS, Jr., t/d/b/a E.L. Flanders—ELF Appliance and Service, Appellant**

v.

**FORD CITY BOROUGH COUNCIL Per The Ford City Uniform Construction Code Board of Appeals.**

Commonwealth Court of Pennsylvania.

Argued Oct. 13, 2009.

Decided Dec. 24, 2009.

Michael D. Gallagher, Butler, for appellant.

Frank Allan Wolfe, Ford City, for appellee.

BEFORE: COHN JUBELIRER, Judge, and LEAVITT, Judge, and QUIGLEY, Senior Judge.

OPINION BY Judge LEAVITT.

Edward L. Flanders, t/d/b/a E.L. Flanders, Elf Appliance and Service, appeals an order of the Court of Common Pleas of Armstrong County (trial court) holding that Flanders was properly denied a building permit. In doing so, the trial court affirmed a decision of the Ford City Borough Uniform Construction Code Board of Appeals (Board) that Flanders needed to obtain blueprints prepared by an architect or engineer before he could be issued the permit in question. Flanders' principal contention is that because the Borough's Construction Code Administrator committed numerous procedural errors, which were not addressed or corrected, either by the Board or by the trial court, he is entitled to the permit. Finding no merit to Flanders' position, we affirm the trial court.

## Background

Flanders is the owner and operator of a business in Ford City Borough that sells and services home appliances. On July 28, 2005, Flanders requested the Borough's Construction Code Administrator (Code

Administrator) to issue a permit for the construction of a foundation for an addition to the building where Flanders operates his business. The Code Administrator completed the application on behalf of Flanders, and Flanders signed it. Attached to the application was Flanders' hand drawn sketch of the proposed foundation work. After the Code Administrator inspected the site, he issued a building permit for construction of the foundation.

On August 19, 2006, Flanders contacted the Code Administrator to obtain a second permit to finish the building addition. The Code Administrator visited the site on August 21, 2006, and informed Flanders that a hand drawn sketch of the addition would be sufficient to complete his second permit application. Three days later, the Code Administrator reversed himself on this advice. By letter of August 24, 2006, the Code Administrator informed Flanders that blueprints prepared by a certified engineer or architect would be needed before a building permit could be issued; a hand drawn sketch would not suffice. Reproduced Record at 62a (R.R.____). Flanders attempted to provide the Code Administrator with a hand drawn sketch of the project, but the Code Administrator refused to accept the sketch.

Notwithstanding the lack of a permit, Flanders began work on the building addition. According to Flanders, time was of the essence because runoff from the exposed poured foundation was causing the ground floor of the existing building to flood. In addition, the $12,000 Flanders had borrowed for the project was not sufficient to cover the added cost of professionally drafted blueprints. The estimates

Flanders sought for these professional services ranged from $5,500 to $14,000.

On September 27, 2006, the Code Administrator issued a stop work order to Flanders. The order directed Flanders to stop construction until he obtained the required blueprints for the project and secured a building permit. When Flanders refused to sign the order and stop construction, the Code Administrator issued a summons to Flanders, charging him with violating (1) the Borough's Uniform Construction Code Ordinance by proceeding without a permit and (2) the August 24, 2006, directive that Flanders submit blueprints for the building he sought to construct with his permit application.

On February 13, 2007, Flanders appeared before a magistrate on the citation and was convicted of violating the Borough's Uniform Construction Code Ordinance, which is a summary offense. The magistrate ordered Flanders to pay a fine of $1,059, or alternatively, $350, if he provided the required blueprints by May 15, 2007. Flanders paid the fine in full and did not appeal the conviction.

On September 26, 2007, the Code Administrator issued a second summons, charging Flanders with failing to comply with the magistrate's February 13, 2007, order that he obtain blueprints and a building permit.[1] In response to this second citation, Flanders, by his counsel, sent a letter to the Ford City Borough Council on October 11, 2007. It stated, in relevant part, as follows:

This firm has been retained to represent Mr. Flanders regarding the citation issued by your Code [Administrator] on or about September 26, 2007. This letter

1. In the interim, Flanders contacted the Pennsylvania Department of Labor and Industry about the Code Administrator's issuance of the initial building permit for the foundation.

The Department reprimanded the Code Administrator for failing to review and approve all necessary construction documents prior to issuing the first permit.

constitutes an appeal to the appropriate Board.

R.R. 26a. The Council did not respond. However, during a proceeding before the magistrate on the September 26, 2007, citation, the Borough agreed that it would cooperate with Flanders in having the Board hear the matter. Borough Brief at 2.

On January 28, 2008, the Board convened a hearing on Flanders' October 11, 2007, appeal. Flanders stated that he was appealing "a non-traffic citation issued against [him] on September 26, 2007." R.R. 70a. The Board questioned its jurisdiction over the citation, but it allowed Flanders to proceed. Flanders contended that his right to due process had been violated because the Code Administrator did not advise him of his right to appeal the stop work order issued on September 27, 2006, and the Board did not provide him with the appropriate notice of the hearing he had requested in his letter of October 11, 2007. Nevertheless, Flanders participated in the Board's January 28, 2008, hearing and addressed the merits of his claim that he was entitled to a building permit.

The Board heard testimony from Flanders, Flanders' secretary and the Code Administrator. The Board treated Flanders' hearing as an appeal of a permit application denial and affirmed the denial. It reasoned as follows:

> Pursuant to the above-referenced appeal hearing the Board of Appeals is charged with considering the following per Act 45:
>
> > 403.122(f). Appeals, variances and extensions of time. A board of appeals shall only consider the following factors when deciding an appeal under section 501 9c)(2) of the act.
> >
> > (1) The true intent of the act or Uniform Construction Code was incorrectly interpreted.
> > (2) The provisions of the act do not apply.
> > (3) An equivalent form of construction is to be used.
>
> The Board has based its decision on item (1) listed above and has determined that items (2) and (3) are not applicable to this appeal. The five (5) members [of] the Board present for the referenced appeal hearing, four (4) voting and one (1) abstaining have decided in favor of the [Code Administrator] and that the Applicant *must* comply with the documentation requirements of the Uniform Construction Code and the Act, based on the evidence and testimony presented at the appeal hearing.
>
> The owner's appeal is denied.

R.R. 27a (emphasis in original). In short, the Board concluded that Flanders was required to submit blueprints in order to obtain a building permit, thereby affirming the decision of the Borough's Code Administrator.

Flanders appealed the Board's decision to the trial court, arguing, *inter alia,* that the Board erred in denying his due process claims. In support, he argued: (1) the Code Administrator did not inform him of his right to appeal the stop work order issued on September 27, 2006, and (2) the Board did not provide him with reasonable prior notice of its January 28, 2008, hearing on his appeal. In addition, Flanders asserted that the Board erred in concluding he did not have a vested right to a building permit, which he had orally requested.

The trial court denied Flanders' appeal. The trial court observed that the Board proceeding consisted of an "avalanche of errors that led to the instant appeal." Trial Court Opinion at 5. These errors includ-

ed Flanders' failure to submit a second permit application in July 2006; Flanders' decision to appeal the magistrate's summary conviction to the Board; and the Board's agreement to hear Flanders' appeal. Notwithstanding these errors, the trial court observed that,

> miraculous[ly] ... the Board of Appeals managed to properly zero in on the real issue: Was it proper that ... Flanders did not receive a second building permit[.]

Trial Court Opinion at 7.

■ The trial court concluded that Flanders did not submit any evidence, written or otherwise, to demonstrate that his proposed addition would comply with the Uniform Construction Code, adopted by the Borough as its ordinance. In addition, the trial court determined that Flanders' alleged due process violations were moot because Flanders did, in fact, participate in the January 28, 2008, hearing before the Board. Finally, the trial court concluded that Flanders did not have a vested right to a building permit to complete his addition. The present appeal followed.[2]

### Appeal

On appeal, Flanders presents three issues for our consideration, which we have reordered for our review. First, Flanders contends that the Code Administrator violated his right to notice and an opportunity to be heard on three separate occasions. Those occasions were: (1) when the Code Administrator determined that blueprints were a requirement before Flanders could be issued a building permit for his proposed addition; (2) when the Code Admin-

istrator issued the stop work order and the summary citation in 2006; and (3) when the Code Administrator issued the 2007 citation. At each occasion, Flanders contends, the Code Administrator was required to give Flanders notice of his right to appeal the Code Administrator's decision to the Board, but he did not do so. Second, Flanders contends that the Board failed to give him notice of the January 28, 2008, hearing that Flanders had requested by letter of October 11, 2007, in violation of due process. Third, Flanders contends the trial court erred in concluding that Flanders did not have a vested right to the second building permit by virtue of the Borough's issuance of the first permit.

### Appeal Right under the Uniform Construction Code

Flanders asserts that the Code Administrator violated Flanders' right to due process. Flanders contends, in essence, that the Code Administrator's decision to require Flanders to obtain blueprints and his subsequent efforts to enforce that determination must be nullified by this Court because the Code Administrator did not advise Flanders of his appeal rights under the Uniform Construction Code.

We begin with a review of the applicable statutory law. In 1999, the Pennsylvania General Assembly enacted the "Pennsylvania Construction Code Act" (Act), Act of November 10, 1999, P.L. 491, *as amended,* 35 P.S. §§ 7210–101–7210–1103, to establish uniform and modern construction standards throughout the Commonwealth. *See* Section 102 of the Act, 35 P.S. § 7210.102; *Modular Building Systems Association v. Department of Labor and Industry,* 858

---

**2.** Where, as here, the trial court does not take additional evidence, this court's review of the Board's determination is limited to determining whether constitutional rights were violated, whether the decision was rendered in accordance with the law, and whether necessary findings of fact are supported by substantial evidence. *Sabatine v. Lower Mt. Bethel Township,* 957 A.2d 353, 355 n. 2 (Pa. Cmwlth.2008).

A.2d 686, 688 (Pa.Cmwlth.2004). The Act authorized the Department of Labor and Industry (Department) to promulgate regulations, and the Department did so on April 12, 2002, and January 9, 2004. These regulations are known as the Uniform Construction Code. *See* Title 34 of the Pennsylvania Code, Chapters 401, 403 and 405. The Act required municipalities to adopt the Uniform Construction Code as their municipal building code within 90 days of the publication of the Uniform Construction Code in the Pennsylvania Bulletin. *See* Section 501(a) of the Act, 35 P.S. § 7210.501(a). Further, the Act provides that the Uniform Construction Code preempts any construction standards established in local ordinances that are different from those in the Uniform Construction Code. Section 104(d) of the Act, 35 P.S. § 7210.104(d).

The Borough of Ford City adopted the Uniform Construction Code as Borough of Ford City Ordinance 657 on June 28, 2004. Accordingly, the Uniform Construction Code was the law in the Borough with respect to construction standards and permit requirements during the period of time relevant to Flanders' project.

Chapter 403 of Title 34 of the Pennsylvania Code governs the administration and enforcement of the Uniform Construction Code. Section 403.42(a) provides that one who seeks to construct or enlarge a commercial building "shall first apply to the building code official and obtain the required permit under § 403.42a." 34 Pa. Code § 403.42(a) [3]. The application must be presented in the approved format, which, *inter alia*, requires construction documents prepared by a licensed architect or licensed professional engineer, showing the location, nature and extent of the work proposed and how the project conforms to the Uniform Construction Code, 34 Pa.Code § 403.42a(a),(b),(c) and (e).[4] If the application is not granted, the building code official's adverse decision may be appealed to a municipality's construction code board of appeals. 34 Pa.

---

3. It provides in relevant part:

   (a) An owner or authorized agent who intends to construct, enlarge, alter, repair, move, demolish or change the occupancy of a commercial building, structure and facility ... shall first apply to the building code official and obtain the required permit under § 403.42a (relating to permit application).
   34 Pa.Code § 403.42(a).

4. The regulation states in relevant part:

   (a) Applications for a permit required under § 403.42 (relating to permit requirements and exemptions) shall be submitted to the building code official in accordance with this section.
   (b) A permit applicant shall submit an application to the building code official and attach construction documents, including plans and specifications, and information concerning special inspection and structural observation programs, Department of Transportation highway access permits and other data required by the building code official with the permit application. . . .
   (c) A licensed architect or licensed professional engineer shall prepare the construction documents under the Architects Licensure Law (63 P.S. §§ 34.1–34.22), or the Engineer, Land Surveyor and Geologist Registration Law (63 P.S. §§ 148–158.2). An unlicensed person may prepare design documents for the remodeling or alteration of a building if there is no compensation and the remodeling or alteration does not relate to additions to the building or changes to the building's structure or means of egress.

   \* \* \*

   (e) The permit applicant shall submit construction documents in a format approved by the building code official. Construction documents shall be clear, indicate the location, nature and extent of the work proposed, and show in detail that the work will conform to the Uniform Construction Code.
   34 Pa.Code § 403.42a(a),(b),(c) and (e).

Code § 403.43(i).[5] The filing of the appeal may be done with the building code official or with some other person chosen by the municipality. 34 Pa.Code § 403.122(a).[6] Where a project proceeds without a building permit or in a manner inconsistent with the permit, the building code official may issue a written stop work order. *See* 34 Pa.Code § 403.81.[7] A person who fails to obey the stop work order may be prosecuted for a summary offense under Section 903 of the Act or made the subject of an enforcement action in a court of law. 34 Pa.Code § 403.81(c).[8]

The appeal procedures in Chapter 403 presume that a permit application has actually been submitted to the building code official. Flanders concedes that he did not submit a written application but, at best, an oral application. In the absence of a written application that conformed to the requirements of 34 Pa.Code § 403.42a, it

can be urged that Flanders did not have any appeal rights. Chapter 403 provides that a "permit applicant may ... appeal a building code official's *action* on the permit application...." 34 Pa.Code § 403.43(i) (emphasis added). For purposes of this discussion, we construe this provision to mean that Flanders had a right to appeal the Code Administrator's "action" of advising Flanders that his permit application would not be considered complete until supported by professionally prepared blueprints. Stated otherwise, the Code Administrator's directive to Flanders that he submit blueprints with his permit application was appealable to the Board under 34 Pa.Code § 403.43(i).

Flanders contends that it is not enough that he had a right to appeal the Code Administrator's directive to obtain blueprints for his project. He contends that the Code Administrator was required to

---

5. It provides in relevant part:

(i) A permit applicant may request extensions of time or variances or *appeal a building code official's action on the permit application* to a board of appeals under § 403.122 (relating to appeals, variances and extensions of time).
34 Pa.Code § 403.43(i) (emphasis added).

6. The cited regulation provides, in relevant part:

An owner or owner's agent may seek a variance or extension of time or appeal a building code official's decision by filing a petition with the building code official or other person designated by the board of appeals on a form provided by the municipality.
34 Pa.Code § 403.122(a).

7. It states as follows:

(a) A building code official may issue a written stop work order when the official determines that construction violates the Uniform Construction Code or is being performed in a dangerous or unsafe manner. The stop work order is to contain the reasons for the order and list the required conditions for construction to resume.

(b) The building code official shall serve the stop work order on the permit owner or the owner's agent by certified mail or personal service.

(c) A person who continues construction after service of a stop work order, except for construction work that is necessary to remove a violation or an unsafe condition, may be subject to the penalties under section 903 of the act (35 P.S. § 7210.903). A building code official may seek enforcement of a stop work order in a court of competent jurisdiction.
34 Pa.Code § 403.81.

8. Section 903 states as follows:

(a) VIOLATION OF ACT.—
(1) Any individual, firm or corporation that violates any provision of this act commits a summary offense and shall, upon conviction, be sentenced to pay a fine of not more than $1,000 and costs.
(2) Each day that a violation of this act continues shall be considered a separate violation.
(b) DISPOSITION OF PENALTIES—The amount of the penalty shall be forwarded to the entity with enforcement jurisdiction.
35 P.S. § 7210.903.

give him notice of the appeal right granted by 34 Pa.Code § 403.43(i). Because the Code Administrator did not do so, Flanders was denied due process. Accordingly, the Code Administrator's directive and all his subsequent enforcement actions must be nullified.

The essentials of due process are notice and an opportunity to be heard. *See Soja v. Pennsylvania State Police,* 500 Pa. 188, 194, 455 A.2d 613, 615 (1982) ("[t]he essential elements of due process are notice and opportunity to be heard and to defend in an orderly proceeding adapted to the nature of the case before the tribunal having jurisdiction of the cause."). Due process is a flexible notion that calls for protections appropriate for the particular situation. *Department of Transportation, Bureau of Driver Licensing v. Clayton,* 546 Pa. 342, 351, 684 A.2d 1060, 1064 (1996). Given the particulars of this case, it is our conclusion that Flanders was not denied due process.

Flanders directs the court to *Luke v. Cataldi,* 593 Pa. 461, 932 A.2d 45 (2007), wherein our Supreme Court held that the grant of a conditional use permit could be nullified because the procedures for its grant had not been followed. In *Luke,* the township failed to conduct a public hearing on the conditional use permit sought by a mining company, and this public hearing was mandated by the Pennsylvania Municipalities Planning Code (MPC).[9] Neighboring landowners argued that because the township never gave them notice of its intention to act on the permit application, as required by the MPC, they were denied an opportunity to participate in the hearing on the permit application in violation of due process. The Supreme Court agreed. Accordingly, it held that the neighboring landowners' complaint stated a basis for their request to have the permits voided *ab initio,* and remanded the matter for a hearing on the merits. *Luke* is not dispositive of Flanders' due process claims.

First, the Uniform Construction Code does not mandate that the code official notify the applicant of his right to appeal the code official's "action" on his permit application. By contrast, the MPC requires the township to give the public notice of a hearing on a mining company's permit application, which was the situation in *Luke.* Further, Flanders offers no authority for his position that notice of a right of appeal is always required by due process. Given the inchoate nature of the government "action" in question, *i.e.,* advice on how to apply for a permit, the implications for due process are minimal. In any case, the procedures for appealing the Code Administrator's "action" were published and available to all members of the public. *See Mogil v. Unemployment Compensation Board of Review,* 50 Pa. Cmwlth. 635, 413 A.2d 480, 481 (1980) (holding that "due process of law does not require an administrative agency to provide a party with notice of right to appeal when ... the agency or the legislature has established a duly published procedure for hearing or appeal after an order."). Stated otherwise, the published procedures in Chapter 403 gave Flanders notice of his appeal right.

Second, Flanders is incorrect in his premise that the Code Administrator's stop work order was appealable to the Board. The issuance of a stop work order is governed by 34 Pa.Code § 403.81, and it does not provide that this order can be appealed to a construction board of appeals. When Flanders began construction without a permit, the Code Administrator was authorized to issue a stop work order.

---

9. Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §§ 10101–11202.

34 Pa.Code § 403.81(a). When Flanders did not stop, the Code Administrator was authorized to enforce his stop work order by initiating a summary proceeding before a magistrate. *See* Section 903 of the Act, 35 P.S. § 7210.903. The citation provided Flanders notice of the alleged violation, and the summary proceeding provided Flanders an opportunity to challenge the validity of the stop work order, including its underlying basis, *i.e.*, Flanders' failure to obtain a building permit. Flanders does not, and cannot, assert that the hearing on the summary citation did not comport with due process.

■■ Third, even if Flanders had pursued an administrative appeal of the Code Administrator's "action" directing him to file a written application with blueprints, that appeal would not have operated as a stay of a parallel enforcement action brought before a magistrate. An appeal of a "corrective order" will stay enforcement action. 34 Pa.Code § 403.122.[10] A stop work order is not a "corrective order" and, in any case, a stop work order is not appealable to a construction code board of appeals. The only way Flanders could have stopped the enforcement action before the magistrate judge was to stop construction.

■ Finally, notwithstanding the Code Administrator's failure to advise Flanders of his right of appeal, Flanders did get a hearing, albeit after the fact, before the Board. Actual participation in legal proceedings waives irregularities in the notice and service procedures, even lack of formal notice. *Reid v. Clendenning*, 193 Pa. 406, 44 A. 500 (1899); *see also In Re: Private Road of Noah M. Brubaker*, 23 Pa.Cmwlth. 418, 352 A.2d 566, 568 (1976)

(observing that an appearance at a hearing normally waives any infirmities in notice).

In sum, we find no merit to Flanders' claim that the Code Administrator's failure to give him notice of the appeal right established in 34 Pa.Code § 403.43(i) violated due process.

**Notice of January 28, 2008, Hearing**

Flanders next asserts that his due process rights were violated by the Board. First, he notes that the Board did not act upon his October 11, 2007, request for a hearing until the matter was raised at Flanders' second hearing before the magistrate judge. Second, he notes that the Board did not give Flanders written notice that the hearing on his request would be held on January 28, 2008. Instead, the Board simply notified Flanders' counsel by telephone of the hearing less than one week before it took place.

■ The Board should have given Flanders written notice of the time and place of the hearing. This is essential to any person's ability to have a meaningful hearing. However, Flanders attended the hearing on January 28, 2008. We agree with the trial court that this participation renders moot Flanders' due process claim. Further, participation in a hearing has the effect of waiving a claim that there have been irregularities in the process afforded. *Reid*, 193 Pa. 406, 44 A. 500.

**Vested Right to Permit**

Flanders argues that he acted in good faith to comply with the Borough's construction standards and permitting requirements. He borrowed and spent considerable sums to construct his addition

---

**10.** It states, in relevant part:
> An appeal or request for a variance or extension of time to a board of appeals will automatically suspend an action to enforce an order to correct until the matter is resolved. . . .

34 Pa.Code § 403.122(c).

relying on the Code Administrator's representations. He also argues that there is no evidence that the public health and safety would be adversely affected by his addition. Thus, Flanders claims he demonstrated a vested right to a building permit as established by this Court in *Rabenold v. Zoning Hearing Board of the Borough of Palmerton*, 777 A.2d 1257 (Pa. Cmwlth.2001).

■ As explained by the trial court, the essential problem with Flanders' contention that he has a vested right to a building permit is that he was never issued a building permit. One may show a vested right to a building permit received in good faith. *Gallagher v. Building Inspector of City of Erie*, 432 Pa. 301, 303, 247 A.2d 572, 573 (1968). The issue here is not a matter of whether Flanders acted in good faith or bad faith. The issue is whether he had a building permit based upon an "oral" application, and the record supports only one conclusion: he did not.

Nevertheless, Flanders makes a compelling argument that to require him to spend $5,000 to $14,000 on blueprints for a project expected to cost $8,000 to construct is unfair and extreme. He has a remedy. The Uniform Construction Code authorizes a municipal construction code board of appeals to grant a variance. 34 Pa.Code § 403.43(i).

### Conclusion

For all the above-stated reasons, we affirm the trial court.

### *ORDER*

AND NOW, this 24th day of December, 2009, the order of the Court of Common Pleas of Armstrong County dated March 19, 2009 is AFFIRMED.