## Walker v. Walker, Appellant.

*Trusts and trustees—Parent and child—Fraud.*

Where a son of superior business experience and ability to his father, who is aged and infirm, induces the latter to mortgage his property for the former's debt, and the son in the absence of his father, fails to pay the debt, and the mortgage is foreclosed, and at the sheriff's sale the son buys in the property which is worth more than double the debt, and uses therefor the very money which he should have used to pay the debt, he will be decreed to hold the property as trustee for his father.

Argued March 14, 1901.    Appeal, No. 43, Oct. T., 1901, by defendant, from decree of C. P. No. 2, Allegheny Co., Oct. T., 1899, No. 103, on bill in equity in case of Abel E. Walker v. Wesley J. Walker.    Before McCollum, C. J., Mitchell, Fell, Mestrezat and Potter, JJ.    Affirmed.

Bill in equity to declare a trust in real estate.    Shafer, J., found the facts to be as follows :

1. The plaintiff is seventy-eight years old; is, and for some time has been, in somewhat feeble health; is a man of very little education; and has lived for the past forty years or more in McKeesport.    The defendant, the only child of the plaintiff, is a man of middle age who has been engaged, for a considerable time, in McKeesport, in the business of a wholesale grocer.

2. In the year 1898, and long prior thereto, the plaintiff was owner of a lot of ground at the corner of Armstrong avenue and Fourth avenue, in the city of McKeesport, having thereon erected a two story frame building, with other improvements, the same being, at that time, worth about $8,000.

3. During a considerable number of years before 1898 the plaintiff was accustomed, from time to time, to indorse, or make accommodation notes for the benefit of the defendant, at various times furnishing him with a number of such notes,

signed in blank as to amount and payee, and in July, 1896, while he was on a visit to Carlisle, Pa., the son caused to be sent to him, to be executed, a mortgage for $3,000 upon the property above described, which was signed and acknowledged by him and returned, and was placed upon record, and afterwards assigned to the German Fire Insurance Co. The plaintiff contends that this mortgage was signed by him in the belief that it was only for $300, and that his son had written to him previously requesting the making of the mortgage for that amount, so that he might procure the proceeds for a car of sugar. This is denied by the defendant, but it is not questioned that the mortgage was made entirely for the benefit of the defendant; that he received the proceeds of it and paid interest upon it from the time it was made until some time in the summer of 1898 ; the debt secured by it being in fact his own debt, and so considered between the parties.

4. The payments of interest made by the defendant on this mortgage were made to E. H. Leizure, under the mistaken impression that he was the agent of the mortgagee. For some time Leizure appears to have paid the interest received by him to the proper parties, but in the spring or summer of 1898 he failed to do so, and a scire facias was issued on the mortgage, which was returned served by the sheriff.

5. At this time, and for a considerable time before, William M. Price, Esq., was acting as an attorney for the plaintiff and for the defendant, and prepared and sent to the plaintiff an affidavit of defense to the mortgage, the purpose of which was to set up the payments made to Leizure as valid payments of interest, and to declare his agency for the mortgagee, which contains an admission of the making of said mortgage, and that the sum of $3,000 was received by him—the plaintiff—from said mortgage. This affidavit of defense was signed and sworn to by the plaintiff before a notary in McKeesport, and was thereupon filed. Judgment having been entered thereon for want of a sufficient affidavit of defense, an appeal was taken to the supreme court, which was afterwards non prossed. The plaintiff claims that this paper was represented by him and the son to be a paper in connection with a transaction about some flour, and that, for that reason, without reading it, he signed it, and that he didn't know anything about the appeal to the supreme

court, and never gave any bond for such appeal, and that his signature to the bond was a forgery. This is denied by the defendant, except that it is admitted that the bond was not signed by the plaintiff nor in his presence, but was signed by Mr. Price in his name. We are inclined to believe that the plaintiff's account of this matter is substantially correct; but, whether it be so or not, it is quite plain that he had no very definite understanding of the matter, and that he gave very little attention to the mortgage, because he rightly believed that it was the business of the defendant to take care of it.

6. Some time in July, 1898, the plaintiff went on a visit to the state of Kansas and remained there for some months. During his absence, about the 1st of August, the mortgagee caused judgment to be entered upon the bond accompanying the mortgage, and the property in question to be levied upon and advertised for the first Monday of September, 1898. Before the plaintiff's return from the west the property was sold by the sheriff on September 5, 1898. The defendant attended the sale and bid for the property, and the same was knocked down to him for the sum of $3,450. He gave his check to the sheriff for some part of the purchase money, which was afterwards dishonored; and after some time the defendant succeeded in making an arrangement with J. H. White, Esq., to assume the purchase of the land and pay the sheriff the purchase money, which he did, and received a deed from the sheriff for the land. The deed was held in this way by Mr. White until April 3, 1899, when a deed was made by him to the defendant for a consideration of $3,500, and at the same time the defendant made to White a purchase money mortgage for $3,000, the deed and mortgage having been both placed on record. The purchase of White was for the defendant, he holding title for him until he should be able to raise the purchase money, and the transaction on the part of White was, in effect, a loan to the defendant.

7. Neither White nor the defendant took possession of the property after the sheriff's sale, or interfered in any way with the collection of the rents by the plaintiff, from the time of the sale until May, 1899, the plaintiff being all that time in receipt of the rents, and having paid a large part at least of a municipal assessment upon the property with the knowledge of

the defendant; and the plaintiff did not, in fact, know of the sale until May, 1899, when one of the tenants showed him a letter directing the tenant not to pay him rent, but supposed, during all the time before and after the sale, that the son was taking care of the mortgage and had paid, or would pay the same as he had the other matters for which he had become liable for him from time to time.

### CONCLUSIONS OF LAW.

While it is true that the influence of a parent over a child is more naturally and more frequently the subject of the care of the court of equity in cases where an undue advantage is claimed to have been taken by one over the other, it is undoubtedly true that if, in fact, the position of the son is superior to that of the father, by reason of the age or infirmity of the latter and the superior business ability and experience of the former, the parent may, in a proper case, equally claim the protection of a court of equity. In this case, in addition to these circumstances, the defendant was, in effect, a principal debtor, owing a debt for which the plaintiff was, in effect, a surety. In the absence of the father the son, having failed to pay the debt which he should have paid, permitted the lands of the father, worth more than double the amount of the debt, to be sold at sheriff's sale, and bought them himself in his own name, using for the purpose the very money which he should have used to pay the debt itself, and he now seeks to hold against the father the property so acquired. We have no hesitation in holding that, under the circumstances of this case, the defendant holds the property so acquired as trustee for his father, and that he is, in equity, bound to reconvey the same to the father, free from liens and incumbrances, and that an account should be stated between the parties of the purchase money paid by the defendant to the sheriff, over and above the debt, interest and costs, if any, and of the rents and profits received by the defendant, and that the defendant pay the costs.

A decree in accordance with the opinion was filed.

*Error assigned* was the decree of the court.

*W. M. Price*, with him *C. C. Dickey*, for appellant.

*W. H. S. Thomson*, of *Thomson & Thomson*, for appellee.

PER CURIAM, May 27, 1901:

The findings and conclusions of the learned court below resulted in a decree which the defendant condemns as unjust and illegal. It seems to us, however, that the decree was warranted by the testimony and a protection to the plaintiff against the fraud and injustice which threatened his financial ruin. The schemes concocted by the defendant were designed to deprive the plaintiff of his property and to render him penniless in his declining years. The decree complained of by the defendant checked him in his reckless and disreputable career. It is to be hoped that hereafter his record will be more acceptable to some persons who have had transactions with him than it has been heretofore.

As we have not discovered any error in the decree complained of we unhesitatingly affirm it.

Decree affirmed and appeal dismissed at the cost of the appellant.