Olive E. Bendean, Respondent, *v.* Dell J. Moody, Appellant, and Florence Pesho, Respondent, Impleaded with Stella B. Craggs and Others, Defendants.

Fourth Department, May 4, 1938.

*Earl C. Vedder*, for the appellant.

*Ralph W. Dox*, for the respondents.

Crosby, J. The defendant Dell J. Moody appeals from an interlocutory judgment of Supreme Court, entered on the decision of an official referee, adjudging that appellant is trustee of a resulting trust, and required to account for the rents, issues and profits, as well as the proceeds of the sale, of a certain twenty-eight-acre parcel of oil land.

The plaintiff and defendants, all the parties to this action, are the children of James S. and Maggie C. Moody. As a result of certain conveyances Maggie C. Moody in 1888 became the owner of twenty-eight acres of oil land located in McKean county, in the State of Pennsylvania. Shortly after acquiring the title Maggie C. Moody gave several mortgages upon said land. Her husband, James S. Moody, also executed the mortgages. Under the laws of Pennsylvania a wife's mortgage is not valid unless executed by her husband. As a result of certain assignments, the title to all

the mortgages rested in Charles Duke on December 29, 1902, and the title to the property, on that date, rested in Maggie C. Moody. At that time Maggie C. Moody was an incompetent person, and had been such for some time, although not yet judicially declared to be such.

In 1903 Maggie C. Moody was adjudicated a lunatic, by legal proceedings had in the State of Pennsylvania, and her husband, James S. Moody, was appointed her committee and continued to act as such until his death, which occurred January 30, 1928. Appellant's answer admits that, after his father's death, he was appointed successor committee for Maggie C. Moody by the Supreme Court of New York State, and that he continued to act as such committee until her death, June 7, 1929, and the answer alleges, and it is not denied, that appellant accounted for his acts as committee in a proceeding in which all the parties to the present suit were made parties.

In 1903, and shortly after James S. Moody was appointed committee for Maggie C. Moody, Mr. Duke foreclosed his mortgages on the twenty-eight acres of oil land. He received two sheriff's deeds of the property dated June 2, 1903, one a deed of an undivided two-thirds and the other of an undivided one-third of the property. The reason for the two deeds was that the mortgages covered different undivided portions of the property. The sheriff's deeds were not recorded until some years later, one in 1908 and one in 1909.

After foreclosing his mortgages, and on June 4, 1903, Duke deeded the twenty-eight acres to one John Ley, and on the same day James S. Moody deeded Ley an additional five acres of his own land. The latter deed recited a consideration of one dollar.

At this point we come to a transaction which is of vital importance in this case. On June 10, 1903, John Ley and James S. Moody entered into a written agreement, whereby the former agreed to sell, and the latter agreed to purchase, the thirty-three acres of land for $3,873.85 to be paid in two years with interest semiannually, which amount Moody unconditionally agreed to pay. The contract contained a further provision that Moody was to pump the oil from said premises and to apply the oil runs upon the purchase price. This latter provision, it appears to me, has caused confusion in this case. It is claimed by the plaintiff that the agreement to apply the oil from the premises upon the purchase price thereof had the same effect as if James Moody had purchased, for himself, the land his wife had formerly owned, by using her property to make the purchase. The learned referee seems to have taken that view. But the undisputed proof is that the land was worth, at that time, less than James Moody agreed to pay for it.

Its greater value, in later years, was due to a new invention, in the oil industry, whereby defunct wells were brought to life, and it must be remembered that Moody obligated himself to pay $3,873.85 for the land in any case. Using the oil runs toward the purchase price was only a means of paying what Moody would have had to pay if the land had never produced a barrel of oil. It further seems to me that another important fact has been overlooked, or at least given too little importance, namely, that oil does not and did not produce itself, at least in this particular field. The undisputed proof is that, on this thirty-three acres, the cost of production equalled, or perhaps exceeded, the value of the oil produced. How can it be said that James Moody paid for this land with his wife's property, the land itself? Upon that reasoning it would be held that a man who purchased a vacant lot and constructed thereon a block that paid a profit equal to the original cost of the lot, had paid the seller of the lot at the seller's expense.

The importance of this point lies in the fact that, under the laws of Pennsylvania, a trustee may purchase to himself the property of his *cestui que trust* and take a title freed from the trust, provided, *first*, that the purchase be at an open and fair sale neither caused nor controlled by him, and, *second*, that he be without other funds or property of the *cestui que trust*, available for use in protecting the latter's rights, and he use his own funds to make the purchase. (*Bruner* v. *Finley*, 187 Penn. St. 389; 41 A. 334; *MacDougall* v. *Citizens Nat. Bank*, 265 Penn. St. 170; 108 A. 608; *Meanor* v. *Hamilton*, 27 Penn. St. 137; *Chorpenning's Appeal*, 32 id. 315; *Hall's Appeal*, 40 id. 409; *Reid* v. *Clendenning*, 193 id. 406; 44 A. 500; *Connor* v. *Gibbons*, 228 Penn. St. 617; 77 A. 1009; *Matter of Kelly*, 297 Penn. St. 17; 146 A. 260.)

It is undisputed that James S. Moody had, in his hands, no other money or property of Maggie C. Moody, which he could have used, with which to protect her land against mortgage foreclosure. It has already been shown that he used his own money, or at least his own credit, with which to make the purchase. It remains to be determined whether the foreclosure was arranged, contrived at or controlled by James S. Moody with the design, or, at any rate, with the effect, of taking an unfair advantage of the incompetent whose committee he was.

In considering this question, it is necessary to keep in mind that a trust, to overturn a record title, can be established only by evidence that is " clear, unequivocal and convincing." (*Stone* v. *Stone*, 277 Penn. St. 277; 121 A. 500; *Dorr* v. *Leippe*, 286 Penn. St. 17; 132 A. 806; *Walker* v. *Walker*, 254 Penn. St. 220; 98 A. 890; *Haupt* v. *Unger*, 222 Penn. St. 439; 71 A. 843; *Byers* v. *Ferner*, 216 Penn. St. 233; 65 A. 620.)

Plaintiff's only witness was her divorced husband. He testified that in 1906, three years after James S. Moody had contracted to purchase the land from Ley, and thirty-one years before the time he testified in this case, James S. Moody told him, in substance, that his tenure of the land was " nothing but a trust." " Q. Did he say who for? A. For Maggie * * * his wife."

This must be regarded as most unsatisfactory evidence to support a trust. There is no proof that Dell J. Moody, the appellant, ever heard of his father's admission, if it may be called such. The appellant acquired the property from James S. Moody by deed dated January 14, 1919, but he had theretofore on June 10, 1908, taken title to such property from John Ley and wife and given back a mortgage unto said John Ley. To bring the alleged trust to the attention of appellant, plaintiff relies upon a complaint served upon appellant in an action brought by James S. Moody. The action was started in 1918, and was for an accounting of an alleged partnership. The plaintiff herein relies upon an allegation in the complaint in that action, which, in substance, alleged that James S. Moody procured the foreclosure action by Duke, and the use of Ley, as a dummy, in order to get the title to the property out of his incompetent wife and in his own name, in order " to redeem the property." The idea of redeeming the property, presumably for the benefit of the *cestui que trust*, and the idea of maneuvering to get the title away from the incompetent, seem inconsistent with each other, but the plaintiff herein lays great stress upon the fact that the present appellant, by means of the complaint in his father's action, started ten years after Ley, at the suggestion of the father, had deeded the land to him, was made aware that his father had held the lands in trust. But it is not fair to read only an isolated phrase of the complaint. The complaint also alleged in substance that James S. Moody bought the land himself, in the first place, and " being at the time of said purchase, free from financial embarrassment, and desiring to assure to his wife a means of support and income in case of his death, caused the title so purchased to be conveyed to her," etc. The clear implication, from the whole complaint, is that James S. Moody claimed that the land was his, and that he took the title in his wife's name in order to fulfill his marital obligation.

And in any case, if a trust arose at all, it arose away back in 1903, and if the only proof of it rests in an ambiguous admission made in 1918 by appellant's predecessor in title, we cannot regard that as " clear, unequivocal and convincing " proof that the appellant became a trustee.

The action brought by James S. Moody against the appellant was never tried, but settled by an instrument in writing which is printed in the record.

I do not find, in the record, any satisfactory proof that any trust ever arose as a result of the manner in which James S. Moody acquired title to the real property in question, and no proof of substance that appellant was charged with knowledge of any trust.

In this opinion Pennsylvania cases have been cited because it is conceded that, except for procedural matters, this case is governed by the laws of Pennsylvania. (*Benton* v. *Safe Deposit Bank*, 255 N. Y. 260, 265.) We have not overlooked cases holding that the courts will look carefully into any transaction whereby a trustee becomes the owner, in his individual character, of property which he formerly held as trustee. But this record is devoid of any satisfactory proof that James S. Moody took any unfair advantage of his *cestui que trust*, and much less proof that the appellant had any notice that such advantage was taken. It seems to me judgment has been made to depend largely on the finding that James S. Moody used not his own money but the property of Maggie C. Moody in paying for the land. I have attempted to show that such is not the case. The case of *Walker* v. *Walker* (199 Penn. St. 435; 49 A. 133) is not in point. In that case a son induced his father to mortgage the latter's land to secure the son's own debt. Upon a foreclosure sale the son purchased the land, which was worth more than double the amount of the mortgage. It was properly held that the son had purchased his father's property using the father's property to make the purchase. No such situation exists in the instant case. There is no proof that the mortgage debt, for which the land was sold, was James S. Moody's debt, unless it be inferred from the latter's complaint against his son, and from that complaint, as a whole, if it be assumed to be true, it can only be gathered that the property rightfully belonged to James S. Moody in the first place.

Certain findings should be disapproved and reversed and new findings made, and the judgment should be reversed, on the law and facts, with costs, and the complaint dismissed, with costs.

All concur, SEARS, P. J., on the sole ground that the defendant Dell J. Moody had no notice at the time of his purchase of the property that James S. Moody's title was subject to any equity of the plaintiff and others, except CUNNINGHAM, J., who dissents and votes for affirmance. Present — SEARS, P. J., CROSBY, LEWIS, CUNNINGHAM and TAYLOR, JJ.

Interlocutory judgment reversed on the law and facts, with costs, and complaint dismissed, with costs. Certain findings of fact and conclusions of law disapproved and reversed and new findings and conclusions made.