Pennsylvania Builders Association,   :
              Petitioner    :
                          :
        v.                 :
                          :
Department of Labor & Industry,   :   No. 479 M.D. 2021
              Respondent   :   Submitted: September 15, 2022

BEFORE:   HONORABLE ANNE E. COVEY, Judge
              HONORABLE ELLEN CEISLER, Judge
              HONORABLE STACY WALLACE, Judge

OPINION BY
JUDGE COVEY                        FILED: October 26, 2022

Before this Court in its original jurisdiction is Pennsylvania Builders Association's (PBA)[1] Application for Judgment on the Pleadings (Application) and the Department of Labor and Industry's (Department) Answer thereto. After review, this Court grants the Application.

## Background[2]

In 1999, the General Assembly enacted the Pennsylvania Construction Code Act (PCCA),[3] the purpose of which was to "establish uniform and modern construction standards throughout the Commonwealth." *Commonwealth v. Null*,

---

[1] PBA is a non-profit statewide trade association that is affiliated with the National Association of Home Builders and 32 other local Pennsylvania associations. *See* Petition for Review in the Nature of a Complaint in Equity Seeking Declaratory Relief and Injunctive Relief ¶ 5. It is governed by a board of directors consisting of representatives from the local associations. *See id*. PBA brings this action on behalf of its nearly 4,200 members, consisting of builders, remodelers, material suppliers, subcontractors, design professionals, and consultants. *See id*.

[2] All facts are as alleged in the pleadings and the documents attached thereto.

[3] Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. §§ 7210.101-7210.1103.

186 A.3d 424, 427 n.1 (Pa. Super. 2018) (quoting *Flanders v. Ford City Borough*, 986 A.2d 964, 969 (Pa. Cmwlth. 2009)).  To that end, in Section 301(a)(1) of the PCCA, the General Assembly mandated that the Department shall "promulgate regulations adopting the [then-current] 1999 [Building Officials and Code Administrators, Inc. (]BOCA[)] National Building Code, Fourteenth Edition, as a Uniform Construction Code [(UCC).[4]]"  35 P.S. § 7210.301(a)(1).  In Section 301(a)(2) of the PCCA, the General Assembly directed that the Department "shall include a provision that all detached one-family and two-family dwellings and one-family townhouses that are not more than three stories in height[,] and their accessory structures[,] shall be designed and constructed either in accordance with the" International Code Council's "[(]ICC[)] International One and Two Family Dwelling Code, 1998 Edition, or in accordance with the requirements of the [UCC]."  35 P.S. § 7210.301(a)(2).  The ICC is a private, non-profit entity.  *See* Petition for Review in the Nature of a Complaint in Equity Seeking Declaratory Relief and Injunctive Relief (Complaint) ¶ 9.  BOCA later merged into the ICC codes.

> Section 304(a)(3) of the PCCA further mandates:
>
> **The [D]epartment shall promulgate regulations updating accessibility standards under Chapter 3 [(Uniform Construction Code)] by adopting** by December 31 of the year of issuance of **the accessibility provisions of the most recently published edition of the ICC codes and any other accessibility requirements which shall be specified in the regulations**, **or contained in or referenced by the** [UCC] **relating to persons with disabilities**.

---

[4] Section 401.1 of the Department's Regulations defines the UCC as "[P]art [XIV of the Department's Regulations, titled Uniform Construction Code], [a]n International Building Code and the International Residential Code for One- and Two-Family Dwellings, available from the International Code Council[], . . . and any standards adopted by the Department in this [P]art [XIV] under [S]ections 301 and 304 of the [PCCA] (35 P.S. §§ 7210.301[,] 7210.304)."  34 Pa. Code § 401.1.

35 P.S. § 7210.304(a)(3) (emphasis added).  Importantly, Section 304(a)(2) of the PCCA adds that regulations promulgated thereunder are exempt from the requirements of Section 205 of what is commonly referred to as the Commonwealth Documents Law (CDL),[5] 45 P.S. § 1205 (relating to Department of Justice approval as to legality), and Sections 204(b) and 301(10) of the Commonwealth Attorneys Act,[6] 71 P.S. §§ 732-204(b), 732-301(10) (relating to reviewing agency regulations for form and legality).  *See* 35 P.S. § 7210.304(a)(2).

On December 25, 2021, pursuant to Section 304(a)(3) of the PCCA, the Department amended Sections 403.21,[7] 403.26,[8] and 403.28[9] of the Department's Regulations, 34 Pa. Code §§ 403.21, 403.26, 403.28, and certain definitions in Section 401.1 of the Department's Regulations, 34 Pa. Code § 401.1, to expressly adopt the ICC's 2021 amendments to accessibility provisions of the International Building Code, International Existing Building Code, and International Swimming

---

[5] Act of July 31, 1968, P.L. 769, *as amended*, 45 P.S. §§ 1102-1602, and 45 Pa.C.S. §§ 501-907.

[6] Act of October 15, 1980, P.L. 950, *as amended*, 71 P.S. §§ 732-101 - 732-506.

[7] Section 403.21(a) of the Department's Regulations adopts and incorporates Chapter 11 of the International Building Code of 2021 and the accessibility provisions of the International Existing Building Code of 2021 as the UCC.  *See* 34 Pa. Code § 403.21(a).  The Department correspondingly amended Section 401.1 of the Department's Regulations to define the *International Building Code* to include, *inter alia*: "Chapter 11 [(Accessibility)] and Appendix E of the 'International Building Code 2021' issued by the ICC[,]" and *International Existing Building Code* to include "[t]he accessibility provisions in the 'International Existing Building Code for Buildings 2021' issued by the ICC."  34 Pa. Code § 401.1.

[8] Amended Section 403.26 of the Department's Regulations adopts the accessibility provisions contained in Section 307.1.4 of the International Swimming Pool and Spa Code of 2021 (relating to general design requirements).  *See* 34 Pa. Code § 403.26.  Section 401.1 of the Department's Regulations defines the *International Swimming Pool and Spa Code* as "[a]n International Swimming Pool and Spa Code issued by the ICC."  34 Pa. Code § 401.1.

[9] Section 403.28(b)(3)(ii) of the Department's Regulations was amended to state that accessibility requirements in the International Building Code of 2021 shall apply to bathrooms in uncertified state-owned buildings, restaurants or retail commercial establishments constructed between August 31, 1965 and February 18, 1989.  *See* 34 Pa. Code § 403.28(b)(3)(ii).

Pool and Spa Code (collectively, 2021 Accessibility Regulations).  *See* Complaint Ex. A, 51 Pa. B. 7981-84 (2021).

**Facts**

On December 29, 2021, PBA filed the Complaint, alleging therein that the General Assembly delegated unfettered legislative authority to a private entity to establish accessibility standards, and that PBA and its members are aggrieved as a result.[10]  Specifically, PBA asserted:

> 26. Section 304(a)(3) of the PCCA . . . is unconstitutional because, in violation of [a]rticle [II], [s]ection 1 of the Pennsylvania Constitution,[11] it delegates "de facto, unfettered control over" accessibility standards, *Protz* [*v. Workers' Comp. Appeal Bd. (Derry Area Sch. Dist.)*, . . . 161 A.3d 827,] 836 [(Pa. 2017)], to the ICC, without building in "any of the procedural mechanisms" essential to "protect against 'administrative arbitrariness and caprice,[']" such as requiring ICC to "hold hearings, accept public comments, or explain the grounds" for the standards it adopts "in a reasoned opinion, which then could be subject to judicial review." *Id.*  Further, the ICC accessibility standard makers are private parties, "not public employees who may be subject to discipline or removal." *Id.*
>
> 27. [The Department's] 2021 Accessibility Regulations, based as they are on this same unconstitutional delegation

---

[10] Also on December 29, 2021, PBA filed an Application for Summary Relief with this Court.  On January 31, 2022, the Department filed an answer to the Application for Summary Relief.  On February 9, 2022, PBA filed an Unopposed Application to Withdraw the Application for Summary Relief and Establish Briefing Schedule re: Application for Judgment on the Pleadings (Application to Withdraw).  On February 23, 2022, this Court granted the Application to Withdraw.

[11] Article II, section 1 of the Pennsylvania Constitution specifies: "The legislative power of this Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives."  PA. CONST. art. II, § 1.  Therefore, "[t]he General Assembly cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority." *Scarantino v. Pub. Sch. Emps.' Ret. Bd.*, 68 A.3d 375, 384 (Pa. Cmwlth. 2013).

4

of legislative power to the ICC, are likewise unconstitutional, and for the same reasons.

Complaint ¶¶ 26-27. PBA claimed that, in addition to adverse economic impacts, delays, or interpretive and enforcement difficulties PBA members will suffer as a result of the 2021 Accessibility Regulations, PBA and its members were denied the opportunity to provide meaningful comment during the promulgation process. *See* Complaint ¶¶ 18, 20.c, 23-24.

PBA attached to the Complaint copies of the Regulatory Analysis Form (Analysis Form) that the Department submitted to the Independent Regulatory Review Commission (IRRC) on November 5, 2021, in support of the 2021 Accessibility Regulations' final-omitted rulemaking,[12] and the December 25, 2021 Pennsylvania Bulletin publication of the 2021 Accessibility Regulations, including the information the Department supplied to IRRC in the Analysis Form. *See* Complaint Exs. A, B. PBA requests from this Court: (1) a declaration that the 2021 Accessibility Regulations unlawfully delegate legislative power to the ICC in violation of article II, section 1 of the Pennsylvania Constitution; and (2) an order permanently enjoining enforcement of the 2021 Accessibility Regulations.

On January 31, 2022, the Department filed an Answer and New Matter to the Complaint. Therein, the Department admitted that it promulgated the 2021 Accessibility Regulations as Section 304(a)(3) of the PCCA mandates. *See* Department Answer & New Matter ¶ 6; *see also* Complaint Ex. C. The Department

---

[12] Normally, agencies must provide notice of proposed rulemaking and review responsive comments before it may promulgate a new or amended regulation. *See* Sections 201 and 202 of the CDL, 45 P.S. §§ 1201-1202. However, Section 204(3) of the CDL allows agencies to omit those steps and proceed to final-omitted rulemaking if notice and comment are "impracticable, unnecessary, or contrary to the public interest." 45 P.S. § 1204(3). Here, the Department declared in the Analysis Form: "The final-omitted procedure is appropriate under the [CDL] because the full regulatory process is impracticable since the PCCA requires the Department to adopt the updated accessibility provisions of the ICC codes without change. *See* 45 P.S. § 1204(a)(3)." Complaint Ex. B, Analysis Form, at 2.

5

acknowledged that it made representations in the Analysis Form that the PCCA required it to adopt the ICC's updated accessibility regulations without analysis or change, *see* Department Answer & New Matter ¶ 16; *see also* Complaint Ex. C at 2, 4, 8-10, and that "[t]he regulated community is required to absorb the cost of compliance with the new or altered standards mandated by th[e 2021 Accessibility Regulations]." Complaint Ex. C at 5. The Department denied that PBA or its members are aggrieved by any economic impact, delay, or interpretive and enforcement difficulties from the promulgation of the 2021 Accessibility Regulations. *See* Department Answer & New Matter ¶¶ 18, 20c., 23-24.

In addition, in its New Matter, the Department asserted: PBA failed to join a necessary party; PBA lacks standing to bring this action; PBA's members failed to exhaust their administrative remedies; the Complaint fails to comply with the Declaratory Judgments Act (DJA);[13] if granted, declaratory judgment would prejudice rights of persons not parties to this proceeding; one or more of PBA's claims is barred by consent, has been waived, or is barred by public policy; the requested relief would cause undue hardship, or unfairly prejudice members of the public who need greater accessibility to commercial buildings and/or Type B Dwelling Units;[14] and, at all times relevant hereto, the Department has applied applicable laws and its Regulations reasonably and in good faith. *See id.* ¶¶ 32-41. On February 8, 2022, PBA filed a Reply to New Matter, denying the Department's New Matter. At that point, the pleadings were closed.

On February 28, 2022, PBA filed the Application, declaring that there are no issues of material fact and that PBA is entitled to judgment in its favor as a matter of law. On March 28, 2022, the Department filed the Answer claiming that

---

[13] 42 Pa.C.S. §§ 7531-7541.

[14] "Type B Dwelling Units include buildings with [four] or more attached units, such as apartments within existing buildings and clusters of [four] or more patio homes." Complaint at 12 n.2.

6

PBA is not entitled to judgment as a matter of law, and that whether PBA had the opportunity to conduct meaningful review and comment before the 2021 Accessibility Regulations were promulgated is a disputed issue of material fact precluding judgment on the pleadings. The parties filed briefs in support of their respective positions.

**Discussion**

Initially, Pennsylvania Rule of Appellate Procedure 1532(b) provides that, "similar to the type of relief envisioned by the Pennsylvania Rules of Civil Procedure regarding judgment on the pleadings[,]" Pa.R.A.P. 1532(b), Note, "[a]t any time after the filing of a petition for review in an . . . original jurisdiction matter, the court may on application enter judgment if the right of the applicant thereto is clear." Pa.R.A.P. 1532(b). This Court has expounded:

> A motion for judgment on the pleadings is in the nature of a demurrer; all of the opposing party's allegations are viewed as true and only those facts which have been specifically admitted by him may be considered against him. In reviewing a motion for judgment on the pleadings, the court may only consider the pleadings themselves and any documents properly attached thereto. A motion for judgment on the pleadings should be granted by a [] court only when the pleadings show there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.

*Trib Total Media, Inc. v. Highlands Sch. Dist.*, 3 A.3d 695, 698 n.2 (Pa. Cmwlth. 2010) (citations omitted).

**Genuine Issues of Material Fact**

"[T]he burden is on the moving party to prove the non-existence of any genuine issue of fact[,] and . . . all doubts as to the existence of a genuine issue of a

7

material fact must be resolved against the moving party." *Lyman v. Boonin*, 635 A.2d 1029, 1032 (Pa. 1993). "[T]his Court regards all of the non-moving party's well-pleaded allegations as true, and may consider against that party only those allegations that it has admitted." *Pa. Dep't of Banking v. NCAS of Del., LLC*, 948 A.2d 752, 759 (Pa. 2008). "Where there are material issues of fact in dispute, judgment on the pleadings cannot be entered." *Pfister v. City of Phila.*, 963 A.2d 593, 597 (Pa. Cmwlth. 2009). "A fact is considered material if its resolution could affect the outcome of the case under the governing law." *Hosp. & Healthsystem Ass'n of Pa. v. Commonwealth*, 77 A.3d 587, 602 (Pa. 2013).

PBA proclaims in the Application that "there are no material facts that bear on either the allegations of the [Complaint] or the Answer [and] New Matter and [R]eply [to New Matter] that are disputed." Application ¶ 6. The Department retorts that its denials and PBA's legal conclusions relative to Complaint paragraphs 18, 20.c, 23, and 24 (wherein PBA asserted that its members will suffer adverse economic, delay, and/or interpretive/enforcement impacts, and have been denied the opportunity to meaningfully comment) represent disputed material facts and, thus, judgment cannot be entered on the pleadings. *See* Department's Answer ¶ 6.

However, PBA's Complaint presents a constitutional challenge to Section 304(a)(3) of the PCCA and the Department's Regulations promulgated pursuant thereto. "Constitutional challenges to legislative enactments present this Court with questions of law . . . ." *Haveman v. Bureau of Pro. & Occupational Affairs, State Bd. of Cosmetology*, 238 A.3d 567, 572 (Pa. Cmwlth. 2020) (quoting *Germantown Cab Co. v. Phila. Parking Auth.*, 206 A.3d 1030, 1041 (Pa. 2019)). Specifically, a challenge that a statute or regulation is a standardless delegation of legislative authority represents a question of law. *See Eagle Env't II, L.P. v. Dep't of Env't Prot.*, 884 A.2d 867, 877 (Pa. 2005) ("[C]hallenges to the constitutionality of regulations or statutes constitute pure questions of law[.]"); *see also U.S. Orgs.*

8

*for Bankr. Alts., Inc. v. Dep't of Banking*, 991 A.2d 370 (Pa. Cmwlth. 2010) (where constitutionality is raised in an application for summary relief further factual development is unnecessary to dispose of the application).

Notwithstanding, PBA pled in Complaint paragraphs 18, 20.c, and 24 that the 2021 Accessibility Regulations' adoption of ICC's current accessibility standards change the UCC's previous accessibility regulations; that such changes will increase costs and delay new building construction and existing building renovations; and, because they conflict with, and are more stringent than, federal accessibility requirements under the Americans With Disabilities Act of 1990[15] and the Fair Housing Amendments Act of 1988,[16] they create significant interpretative and enforcement difficulties, all to the detriment of PBA and its members. *See* Complaint ¶¶ 18, 20.c, 24. PBA also alleged in Complaint paragraph 23 that the Department's automatic adoption of the ICC's accessibility standards denied PBA the opportunity to provide meaningful comment on the 2021 Accessibility Regulations before the Department promulgated them. *See id*. ¶ 23.

In its Answer and New Matter, the Department admitted that the 2021 Accessibility Regulations changed the UCC's previous accessibility regulations, but specifically denied that the changes would delay planned projects or create interpretive and enforcement difficulties. *See* Department Answer & New Matter ¶¶ 18, 24. The Department also denied that the changes would increase costs, claiming the Department lacked sufficient knowledge or information as to the truth of that claim, and that it was speculative. *See id*. ¶¶ 18, 20.c. The Department further denied that PBA was not afforded meaningful review of the 2021 Accessibility Regulations, stating: "[O]n July 20, 2021, an authorized representative of [the Department] emailed Daniel Durden [(Durden)], President of PBA, to, *inter alia*, see

---

[15] 42 U.S.C. §§ 12101-12213.
[16] 42 U.S.C. §§ 3601-3631.

9

whether [he] and [his] organization support these changes, or if there are any concerns with these sections[,]" *id*. at 23 (quotation marks omitted), but Durden did not respond.[17]

Although the Department claimed in its Answer and New Matter that PBA had an opportunity to meaningfully comment on the 2021 Accessibility Regulations, the Department had previously represented to IRRC in the Analysis Form:[18] "[T]he PCCA requires the Department to adopt the updated accessibility provisions of the ICC codes without change." Complaint Ex. B, Analysis Form, at 2, *see also* Complaint Ex. B, Analysis Form, at 4, 8-10; "No alternatives may be considered." *Id*. at 8; and, the Department "has no flexibility with the[] [2021 Accessibility Regulations, as] . . . [it] is without discretion to modify them." *Id*. at 9. IRRC published the Department's responses in the December 25, 2021 Pennsylvania Bulletin. *See* Complaint Ex. A. Those statements confirm the Department's allegations that it "had no role in the formulation of the updated ICC standards" and, by extension, the 2021 Accessibility Regulations adopting those standards. Department Answer & New Matter ¶ 17.

In addition, although it claimed in its Answer and New Matter that it lacked knowledge of whether the 2021 Accessibility Regulations would impact PBA members, according to the Analysis Form, the Department had previously informed

---

[17] In the Analysis Form, the Department declared that PBA "expressed support" for the 2021 Accessibility Regulations. Complaint Ex. B, Analysis Form, at 4. Pennsylvania Bulletin at 2 (51 Pa. B. at 7981). In the Complaint, PBA clarified that the Department's representation was incorrect. *See* Complaint at 4 n.1. The Department did not proffer in the pleadings any support for its conclusion that PBA's lack of response evidenced PBA's acquiescence or consent. However, the Department admits in its brief to this Court that PBA's failure to respond "d[id] not . . . constitute a binding acceptance [of the 2021 Accessibility Regulations.]" Department Br. at 13.

[18] IRRC incorporated the Department's Analysis Form responses in the Pennsylvania Bulletin publication of the 2021 Accessibility Regulations. *See* Complaint Ex. A, 51 Pa. B. 7981-84.

10

the IRRC: "The regulated community[19] will be financially impacted by the cost of compliance with updated building codes; however, the PCCA requires the Department to update the accessibility regulations and prescribes the standards that the Department must adopt."  Complaint Ex. B, Analysis Form, at 4.  The Department also declared:

> The regulated community is required to absorb the cost of compliance with the new or altered standards mandated by the[] [2021 Accessibility Regulations].  It is impossible to estimate the cost of compliance since the number of projects and the design of each individual project is unknown.  Third-party agencies that perform UCC inspection[s] may incur costs associated with updating their code materials.

*Id*. at 5.  Therefore, although the *amount* of such costs may be speculative at this stage, the Department has admitted that the 2021 Accessibility Regulations *will* economically impact PBA's members.

Based on the pleadings and documents attached thereto, the General Assembly mandated in Section 304(a)(3) of the PCCA that the Department adopt ICC's accessibility codes without change and, thus, any PBA comments lacked meaningful effect on the 2021 Accessibility Regulations.  Further, based on the pleadings and documents attached thereto, PBA and its members will experience associated costs.  Accordingly, the Department's denials and PBA's legal conclusions relative to Complaint paragraphs 18, 20.c, 23, and 24, do not prevent

---

[19] When asked to list the persons, groups, or entities that will be required to comply with the 2021 Accessibility Regulations, the Department responded, in pertinent part:

> Building and facility contractors, design professionals, manufactured housing and modular building manufacturers, building and facility owners, developers, local municipalities, construction code officials, third[-]party inspection agencies and the Department must comply with th[e 2021 Accessibility Regulations].

Complaint Ex. B, Analysis Form, at 4.

11

this Court from granting the Application if PBA is entitled to judgment in its favor as a matter of law.

## Entitlement to Judgment as a Matter of Law

### 1. Declaratory Judgment

PBA claims that it is entitled to a declaratory judgment in its favor as a matter of law. *See* Application ¶¶ 7-8. Declaratory judgment petitions are governed by the DJA. The DJA's purpose is "to settle and to afford relief from uncertainty and insecurity with respect to rights, status, and other legal relations" and, accordingly, must "be liberally construed and administered." 42 Pa.C.S. § 7541(a). To that end, Section 7533 of the DJA specifies: "Any person . . . whose rights, status, or other legal relations are affected by a statute . . . may have determined any question of construction or validity arising under the . . . statute . . . and obtain a declaration of rights, status, or other legal relations thereunder." 42 Pa.C.S. § 7533. Thus, Section 7532 of the DJA affords courts the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed[] . . . , and such declarations shall have the force and effect of a final judgment or decree." 42 Pa.C.S. § 7532. Moreover, the Pennsylvania Supreme Court has ruled that "a facial challenge to the validity of a statutory provision and pure question of law . . . is [] generally appropriate for pre-enforcement review in a declaratory judgment action." *Robinson Twp., Wash. Cnty. v. Commonwealth*, 83 A.3d 901, 990 (Pa. 2013); *see also Bayada Nurses, Inc. v. Dep't of Lab. & Indus.*, 8 A.3d 866 (Pa. 2010).

#### a. Standing

Preliminarily, the Department claims that PBA lacks standing to bring this action. "[A] person who is not adversely affected in any way by the matter he seeks to challenge is not aggrieved thereby and has no standing to obtain a judicial

12

resolution of his challenge." *Fumo v. City of Phila.*, 972 A.2d 487, 496 (Pa. 2009). "An individual can demonstrate that he has been aggrieved if he can establish that he has a substantial, direct and immediate interest in the outcome of the litigation." *Id.*

> A substantial interest in the outcome of litigation is one that surpasses the common interest of all citizens in procuring obedience to the law. A direct interest requires a causal connection between the asserted violation and the harm complained of. An interest is immediate when the causal connection is not remote or speculative.

*Phantom Fireworks Showrooms, LLC v. Wolf*, 198 A.3d 1205, 1215 ('Pa. Cmwlth. 2018) (citations omitted).

> Under Pennsylvania law, an association has standing as representative of its members to bring a cause of action even in the absence of injury to itself, if the association alleges that at least one of its members is suffering immediate or threatened injury as a result of the action challenged. [*See*] *P*[*a.*] *Med. Soc'y v. Dep't of Pub. Welfare*, . . . 39 A.3d 267, 278 ([Pa.] 2012); *accord S*[.] *Whitehall Twp. Police Serv. v. S*[.] *Whitehall Twp.*, . . . 555 A.2d 793, ([Pa.] 1989) (collective bargaining agent has standing to sue if members are aggrieved, even if action is not related solely to collective bargaining).

*Robinson Twp.*, 83 A.3d at 922; *see also Friends of Lackawanna v. Dunmore Borough Zoning Hearing Bd.*, 186 A.3d 525 (Pa. Cmwlth. 2018); *see also William Penn Parking Garage, Inc. v. City of Pittsburgh*, 346 A.2d 269 (Pa. 1975) (harm to parking garage operators' businesses due to public parking tax gave them standing to challenge the tax); *N.-Cent. Pa. Trial Lawyers Ass'n v. Weaver*, 827 A.2d 550 (Pa. Cmwlth. 2003) (association had standing based on allegations that the challenged statute directly affected its membership of Pennsylvania medical malpractice attorneys, and whose clients would be directly and substantially affected). "Under Pennsylvania law, the doctrine of standing is 'a prudential,

judicially[]created tool,' affording discretion to courts." *Firearm Owners Against Crime v. Papenfuse*, 261 A.3d 467, 481 (Pa. 2021) (quoting *In re Hickson*, 821 A.2d 1238, 1243 (Pa. 2003)).

Here, based on the facts as pled in the Complaint, that are supported by the documents attached thereto, PBA's members will, at the very least, experience economic impacts due to the Department's adoption of the ICC's updated accessibility codes. *See* Complaint ¶¶ 18, 20.c, 23-24, Exs. A, B. Accordingly, because PBA members will be aggrieved, this Court holds that PBA has associational standing to bring this action.

### b. Merits

"The Pennsylvania Constitution prevents the General Assembly from passing off to another branch or body *de facto* control over matters of policy." *Protz*, 161 A.3d at 841. In the Complaint, PBA seeks a declaration from this Court that Section 304(a)(3) of the PCCA, and the Department's 2021 Accessibility Regulations promulgated pursuant thereto, unlawfully delegate legislative power to the ICC, a private entity, in violation of article II, section 1 of the Pennsylvania Constitution. The Department admitted in the pleadings that it had no role in the formulation of the updated ICC standards, and adopted the ICC's 2021 accessibility amendments without change. *See* Complaint Ex. B, Analysis Form, at 2, 4, 8-10; *see also* Department Answer & New Matter ¶ 17.

PBA argues:

> Section 304(a)(3)[ of the PCCA]'s directive, . . . in its essence, requires [the Department] to rubber-stamp into law whatever accessibility standards the ICC publishes, without the ability to consider any alterations to these standards. In abdicating its responsibility to legislate and make policy choices as to the appropriate accessibility standards, and delegating that responsibility to a third

14

party it does not control, the General Assembly has failed to provide any mechanism for [the Department] to question, modify, reject, or even independently review and concur with the accessibility standards the ICC adopts. Rather, Section 304 [of the PCCA] gives "*de facto*, unfettered control" to a private entity, including "incorporating, sight unseen, subsequent modifications" to standards "without also providing adequate criteria to guide and restrain the exercise of the delegated authority," *Protz*, in direct violation of [a]rticle II, [s]ection 1.

PBA Br. at 18 (italics added).

In 2010, after the Department promulgated Regulations adopting ICC's 2009 code amendments (related to sprinkler requirements), PBA similarly sought a declaration that Section 304(a) of the PCCA and its related Regulations violated article II, section 1 of the Pennsylvania Constitution, and an injunction prohibiting the Department from enforcing them. *See Pa. Builders Ass'n v. Dep't of Lab. & Indus.*, 4 A.3d 215 (Pa. Cmwlth. 2010).

The *Pennsylvania Builders Association* Court explained:

By claiming that the PCCA is unconstitutional, [PBA] ha[s] a heavy burden to overcome.

Our law provides a strong presumption that legislative enactments, as well as the manner in which legislation is enacted, do not violate the [Pennsylvania] Constitution. A party that challenges the constitutionality of a statute bears 'a very heavy burden of persuasion' to overcome this presumption. 'Accordingly, a statute will not be declared unconstitutional unless it *clearly*, *palpably*, and *plainly* violates the [Pennsylvania] Constitution [and a]ll doubts are to be resolved in favor of finding that the legislative enactment passes constitutional muster.'

*Ass'n of Settlement Cos. v. Dep't of Banking*, 977 A.2d 1257, 1261 (Pa. Cmwlth. 2009) (citations omitted).

Article II, [s]ection 1 of the Pennsylvania Constitution provides that "[t]he legislative power of this

15

Commonwealth shall be vested in a General Assembly, which shall consist of a Senate and a House of Representatives." P[A]. C[ONST]. art. II, § 1. "Legislative power has been described as the power to incur public debts, levy or collect taxes or make laws." *Scuoteguazza v. Dep't of Transp.*, . . . 399 A.2d 1155, 1157 ([Pa. Cmwlth.] 1979). The legislative power implicated here is the General Assembly's authority to "make laws." In *Association of Settlement Companies*, this Court stated that "[a]rticle II, section 1 [of the Pennsylvania Constitution] embodies the fundamental concept that only the General Assembly may make laws, and cannot constitutionally delegate the power to make law to any other branch of government or to any other body or authority." [*Id.*] at 1265 (quotation marks omitted). Thus, neither [the Department] nor ICC may be delegated the General Assembly's power to make law.

*Pa. Builders Ass'n*, 4 A.3d at 220-21.

> [T]o the extent the General Assembly was attempting via the PCCA to delegate its rule-making authority over Pennsylvania's building codes to [the Department] and, consequently ICC, it had the authority to do so as long as, in light of the subject matter covered and the scope of the powers granted therein, the PCCA sets forth a definite and reasonable standard for such authority.

*Pa. Builders Ass'n*, 4 A.3d at 221.

> [T]he non-delegation doctrine does not prevent the General Assembly from adopting as its own a particular set of standards which already are in existence at the time of adoption. However, . . . **the non-delegation doctrine prohibits the General Assembly from incorporating**, **sight unseen**, **subsequent modifications to such standards without also providing adequate criteria to guide and restrain the exercise of the delegated authority**.

*Protz*, 161 A.3d at 838-39 (emphasis added). The *Pennsylvania Builders Association* Court examined the process by which the Department adopted the ICC's code amendments pursuant to Section 304(a) of the PCCA, and determined that,

16

until 2008, when the General Assembly added Section 107 of the PCCA[20] establishing the UCC Review and Advisory Council (RAC),[21]

> [the Department] was, in fact, mandated to promulgate ICC's codes as Pennsylvania's UCC without exception. So if, in fact, [the Department] does not go through notice-and-comment rulemaking, and there is no other oversight of the process, Pennsylvania's UCC would be adopted without the opportunity for interested parties to express their views on how those changes would affect the Commonwealth. As a result, it would appear that at least for Pennsylvania's [previous] UCC, ICC wielded extraordinary power to establish Pennsylvania's building laws.
>
> As for the 2009 UCC at issue here, the introduction of RAC to the process of [the Department's] adoption of the Pennsylvania UCC afforded oversight and input by industry members, and meant that [the Department] could no longer adopt ICC's codes "sight unseen." Thus, what

---

[20] Added by Section 2 of the Act of October 9, 2008, P.L. 1386, 35 P.S. § 7210.107.

[21] RAC is

> a 19-member group consisting of industry members (such as contractors, engineers, inspectors and architects) appointed by the Governor, whose responsibility is to gather information relative to the UCC and proposed changes thereto, evaluate it, and make recommendations to the Governor concerning it. Under Sections 107(b)(3) and 304(d)(1)-(2) of the PCCA, 35 P.S. §§ 7210.107(b)(3), 7210.304(d)(1)-(2), RAC is authorized to make determinations as to whether any new or amended provisions of ICC's codes are not consistent with the PCCA, or are inappropriate for inclusion in Pennsylvania's UCC, and RAC is to notify [the Department] of the same by May 1st of the issuing year. Where that is the case, [the Department] must exclude the offending provisions when adopting the UCC, thereby leaving the corresponding provisions of the prior UCC version in effect.

*Pa. Builders Ass'n*, 4 A.3d at 218. RAC has the authority, after review and comment by industry members, and the public, to "adopt, reject[,] or modify" the updated ICC codes before incorporating them into the UCC. Section 108(a)(ix) of the PCCA, added by Section 3 of the Act of October 25, 2017, P.L. 356, 35 P.S. § 7210.108(a)(ix).

Section 304(d) of the PCCA has since been deleted by Section 2 of the Act of April 25, 2011, P.L. 1, and replaced by other provisions.

was unconstitutional about the pre-RAC process had been rectified by the time [the Department] was required to adopt ICC's 2009 codes. The RAC process served as a means for the General Assembly to restrain [the Department's] promulgation of Pennsylvania's construction laws. According to the pleadings, it is undisputed that at the time [the Department] had to adopt ICC's 2009 codes, RAC was in place, held hearings, and received submissions from PBA on ICC's 2009 codes.

*Pa. Builders Ass'n*, 4 A.3d at 222 (footnote omitted).

The *Pennsylvania Builders Association* Court observed:

[T]he PCCA's basic policy choices are made by the General Assembly. Section 102(b) of the PCCA[, 35 P.S. § 7210.102(b),] clearly sets forth the General Assembly's purpose for the PCCA by providing eight specific objectives for the PCCA. Since it is clear that the PCCA sets forth the General Assembly's basic policy, the first requirement for lawful delegation of administrative duties by the General Assembly has clearly been met.

The PCCA also contains adequate standards to guide and restrain its execution and [the Department's] exercise of the delegated administrative functions. Pennsylvania's non-delegation doctrine "does not require that all of the details needed to administer a law be precisely or separately enumerated in the statute." *Matter of Revocation of Rest. Liquor License No. R-12122*, . . . 467 A.2d 85, 87 ([Pa. Cmwlth.] 1983). Moreover, as stated previously, standards that control a non-legislative party's exercise of rulemaking authority must be viewed in light of the task necessary to accomplish the General Assembly's purpose. [*See*] *Gilligan* [*v. Pa. Horse Racing Comm'n*, 422 A.2d 487 (Pa. 1980)].

In the instant case, by the creation of RAC alone, the second requirement was met as to the 2009 UCC. Pursuant to Section 304(d) of the PCCA, after RAC reviews and considers ICC's codes, if it finds that any section of ICC's codes should be excluded, [the Department] must exclude it when updating Pennsylvania's UCC. In addition to the creation of RAC, Section 301 of the PCCA very specifically spells out how

[the Department] is to adopt Pennsylvania's UCC. For example, it provides the period of time in which [the Department] must act, what information [the Department] must consider (i.e., accessibility), prescribes standards to be met and which entities may weigh in as to those standards, etc. Finally, the Pennsylvania Supreme Court and this Court have held that, where proposals by private parties are required to be reviewed by a regulatory agency before they are effective, there is no unconstitutional delegation. *P[a.] Coal Mining Ass'n v. Ins. Dep't*, . . . 370 A.2d 685 ([Pa.] 1977); *Longwood Villa Nursing [&] Convalescent Home Appeal*, . . . 364 A.2d 976 ([Pa. Cmwlth.] 1976). Thus, the second requirement for the General Assembly's delegation of administrative authority has been met.

*Pa. Builders Ass'n*, 4 A.3d at 224-25 (footnote omitted).

The *Pennsylvania Builders Association* Court concluded:

[T]he RAC system worked in the manner in which the General Assembly intended, and was a restraint on [the Department's] exercise of administrative authority. Since the PCCA's basic policy choices are clearly made by the General Assembly, and the PCCA contains adequate standards to guide and restrain the exercise of [the Department's] delegated functions, we hold that the General Assembly did not unconstitutionally delegate its authority over its execution and administration of the 2009 version of Pennsylvania's UCC.

. . . .

Accordingly, we hold that the post-RAC PCCA neither improperly delegated the General Assembly's rule-making authority, nor its authority over the execution and administration of that law, so [the Department's] adoption of ICC's 2009 codes as Pennsylvania's 2009 UCC did not violate [a]rticle II, [s]ection 1 of the Pennsylvania Constitution.

*Id*. at 225-26. Thus, in *Pennsylvania Builders Association*, the RAC process supplied the necessary guidance and restraint for the exercise of delegated legislative functions.

19

The Pennsylvania Supreme Court decided *Protz* in 2017.

At issue in *Protz* was [Section 306(a.2)] of the Workers' Compensation [(WC)] Act [(WC Act)] relating to impairment rating evaluations (IREs) of [WC] claimants . . . , 77 P.S. § 511.2(1),[22] [which] required physicians performing IREs to apply the methodology provided in "the most recent edition" of the American Medical Association [(AMA)] GUIDES TO THE EVALUATION OF PERMANENT IMPAIRMENT ([Guides]). *Protz*, 161 A.3d at 830 (quoting 77 P.S. § 511.2(1)). The [Supreme] Court found this statutory provision violated [a]rticle II, [s]ection 1 of the Pennsylvania Constitution, which vests all legislative power in the General Assembly. *Protz*, 161 A.3d at 830.

*Phantom Fireworks*, 198 A.3d at 1227 (footnotes omitted).

[I]in *Protz*, the [Supreme] Court found the General Assembly's delegation of authority to the AMA failed to provide any of the necessary safeguards. Without any policy statement or other limiting parameters, the AMA could create any formula, including one that would yield a loss of disability benefits for every claimant, or alternatively, for no claimant. [*See i*]*d*. Moreover, it could change the formula at will, potentially with such frequency that no one could keep up with the changes, or alternatively, with such infrequency as to fall behind recent medical advances. [*See i*]*d*. It could add new provisions or remove existing ones. [*See i*]*d*.

The [*Protz*] Court also observed that the General Assembly failed to "require that the AMA hold hearings, accept public comments, or explain the grounds for its methodology in a reasoned opinion, which then could be subject to judicial review. Further, the AMA physicians who author the [Guides] are, of course, not public employees who may be subject to discipline or removal."

---

[22] Section 306(a.2) of the WC Act, Act of June 2, 1915, P.L. 736, *as amended*, added by the Act of June 24, 1996, P.L. 350, *formerly* 77 P.S. § 511.2, was repealed by the Act of October 24, 2018, P.L. 714 (Act 111), and replaced by Section 306(a.3) of the WC Act, added by Section 1 of Act 111, 77 P.S. § 511.3.

> *Id.* at 836 (citing *Tosto* [*v. Pa. Nursing Home Loan Agency*, 331 A.2d 198, 202 (Pa. 1975)]).

*Phantom Fireworks*, 198 A.3d at 1227-28 .

*Phantom Fireworks* involved Act 43.[23] The petitioners therein challenged a portion thereof which provided that fireworks sales in temporary structures are governed by the safety standards in Standard 1124 of the 2006 edition of the National Fire Protection Act (NFPA) Code for the Manufacture, Transportation, and Storage of Fireworks and Pyrotechnic Articles (NFPA Code) **and any subsequent edition thereof**. The petitioners claimed that Act 43 was an impermissible delegation of legislative authority in violation of article II, section 1 of the Pennsylvania Constitution.

After reviewing Act 43 and related statutes and regulations, the *Phantom Fireworks* Court concluded that the subject provision violated article II, section 1 of the Pennsylvania Constitution as an impermissible delegation of legislative authority by the General Assembly. The *Phantom Fireworks* Court reasoned:

> [T]he provisions of Act 43 at issue suffer from the same constitutional defects as the AMA standards in *Protz*. The General Assembly delegated authority to the NFPA without providing any of the safeguards required to conform that delegation of authority to constitutional strictures. The General Assembly provided no policy statement or other limiting parameters, leaving the NFPA free to create, alter, or remove, as frequently or infrequently as it chooses, any standard it chooses concerning temporary structures used to sell fireworks. Moreover, without statutory controls, NFPA drafters may be open to influence by trade groups or individuals whose interests may or may not match those of the electors.
>
> Moreover, as in *Protz*, the General Assembly here failed to include in Act 43 any provisions that would require the

---

[23] Act of October 30, 2017, P.L. 672, No. 43.

21

> NFPA to hold hearings, accept public comments, or explain the grounds for its safety standards in reasoned opinions which are subject to judicial review. Similarly, the private individuals who draft the NFPA's safety standards are not public employees subject to discipline or removal by the General Assembly or any public agency.

*Phantom Fireworks*, 198 A.3d at 1228.

Applying the well-settled delegation standards and case law to the case at bar, the General Assembly had the authority "to delegate to [the Department] and, consequently [the] ICC, its execution and administrative authority over Pennsylvania's [accessibility] codes, . . . as long as: (1) basic policy choices are still made by the General Assembly; and (2) the legislation contains adequate standards to guide and restrain the exercise of those functions." *Pa. Builders Ass'n*, 4 A.3d at 224.

Relative to the first delegation requirement, this Court rules that the General Assembly made basic policy choices as explained in the *Pennsylvania Builders Association* Court's conclusion that

> the PCCA's basic policy choices are made by the General Assembly. Section 102(b) of the PCCA clearly sets forth the General Assembly's purpose for the PCCA by providing eight specific objectives for the PCCA. Since it is clear that the PCCA sets forth the General Assembly's basic policy, the first requirement for lawful delegation of administrative duties by the General Assembly has clearly been met.

*Pa. Builders Ass'n*, 4 A.3d at 224 (footnote omitted).

However, relative to whether the PCCA contains adequate standards to guide and restrain the General Assembly's delegation, although the RAC process remains in effect to control UCC amendments, Section 107(b)(3) of the PCCA announces:

> **With the exception of the accessibility provisions of the most recently published editions of ICC codes**, or any

22

**other accessibility requirements** specified in regulation, contained in or referenced by the [UCC] relating to persons with physical disabilities, [RAC shall] review the updated sections, as provided under [S]ection 108 [of the PCCA, 35 P.S. § 7210.108,] or other sections of the collective codes, as provided under [S]ection 108(a)(1)(iii) [of the PCCA, 35 P.S. § 7210.108(a)(1)(iii) (relating to additional sections)].

35 P.S. § 7210.107(b)(3) (emphasis added). Because the PCCA expressly exempts ICC accessibility standards from the RAC review process, the RAC process does not apply in the instant matter. *See* Complaint ¶ 13; Department Answer & New Matter ¶ 13.

Instead, in Section 106(a)(1) of the PCCA, the General Assembly provides:

There is hereby created an Accessibility Advisory Board which shall be composed of 11 members appointed by the [Department's] secretary. At least six members of the [Accessibility A]dvisory [B]oard shall be public members, three of whom shall be persons with physical disabilities, one shall be an architect registered in Pennsylvania, one shall be a member of the business community, and one shall be a representative of the multifamily housing industry. One member shall be a municipal official. The chairman and minority chairman of the Labor and Industry Committee of the Senate and the chairman and minority chairman of the Labor Relations Committee of the House of Representatives, or their designees, shall be members. All members of the [Accessibility A]dvisory [B]oard, except the members of the General Assembly, shall serve for a term of two years and until their successors are appointed.

35 P.S. § 7210.106(a)(1).

Section 106(b) of the PCCA specifies that "[t]he [Accessibility A]dvisory [B]oard shall review all proposed regulations under [the PCCA] and *shall offer comment and advice* to the [Department's] secretary on all issues relating to accessibility by persons with physical disabilities, including those which relate to

the enforcement of the accessibility requirements."[24]  35 P.S. § 7210.106(b) (emphasis added); *see also* Section 403.142(b)(1) of the Department's Regulations, 34 Pa. Code § 403.142(b)(1).  Importantly, however, although the Department must *consider* the Accessibility Advisory Board's comments and advice, unlike with RAC, the General Assembly has not expressly authorized the Department to alter ICC's accessibility standards based on such input.[25]

Here, the Accessibility Advisory Board reviewed the 2021 Accessibility Regulations.  In the Analysis Form, the Department represented to the IRRC: "On July 15, 2021, the Department sought input from the Accessibility Advisory Board," which "expressed no concern with the proposed changes." Complaint Ex. B, Analysis Form, at 3.  Notwithstanding, given the General Assembly's statutory mandate that the Department adopt the ICC's accessibility codes without modification, the Accessibility Advisory Board's review process does not in any way guide or restrain the ICC's control over Pennsylvania's UCC and the Department's Regulations.[26]

---

[24] Section 301(a)(4) of the PCCA also provides:

> The secretary shall consider the recommendations of the [Accessibility A]dvisory [B]oard as provided in [S]ection 106(c) [of the PCCA (relating to whether the secretary should grant modifications from Chapter 11 (Accessibility) of the UCC provisions for individual projects)]. . . .

35 P.S. § 7210.301(a)(4).  Section 106(c) of the PCCA authorizes the Accessibility Advisory Board to review and decide individual project modification applications.  *See* 35 P.S. § 7210.106(c); *see also* Section 403.142(b)(2) of the Department's Regulations, 34 Pa. Code § 403.142(b)(2).

[25] Section 106(c) of the PCCA's directive for the Accessibility Advisory Board to review individual project modification applications and "advise the secretary regarding whether modification should be granted or whether compliance . . . is technically infeasible[,]" 35 P.S. § 7210.106(c), does not provide such authority.

[26] The Department also sought PBA's input regarding the 2021 Accessibility Regulations.  Although PBA did not respond, as the Department has publicly represented, the Department lacked authority to make any changes to the 2021 Accessibility Regulations had the PBA commented.

24

Moreover,

> as in *Protz*, the General Assembly here failed to include in [Section 304(a)(3) of the PCCA] any provisions that would require the [Department] to hold hearings, accept public comments, or explain the grounds for its [accessibility] standards in reasoned opinions which are subject to judicial review. Similarly, the private individuals who draft the [Department's accessibility] standards are not public employees subject to discipline or removal by the General Assembly or any public agency.

*Phantom Fireworks*, 198 A.3d at 1228. As written, in Section 304(a)(3) of the PCCA, the General Assembly requires the Department to "incorporat[e], sight unseen, subsequent modifications to [accessibility] standards without also providing adequate criteria to guide and restrain the exercise of the delegated authority." *Protz*, 161 A.3d at 839. In the absence of any such guidance or restraint, the second requirement for the General Assembly's delegation of legislative authority has not been met.

Based on the foregoing, this Court holds that Section 304(a)(3) of the PCCA delegates the General Assembly's rule-making authority and its authority over execution and administration of the UCC's accessibility provisions to the ICC, a non-governmental entity, clearly, palpably, and plainly in violation of article II, section 1 of the Pennsylvania Constitution. Accordingly, because PBA has overcome its burden of establishing that Section 304(a)(3) of the PCCA is unconstitutional, PBA is entitled to a declaratory judgment in its favor as a matter of law.

---

Notably, in the Analysis Form, the Department declared that PBA "expressed support" for the 2021 Accessibility Regulations. Complaint Ex. B, Analysis Form, at 4. The IRRC published that statement with the 2021 Accessibility Regulations in the Pennsylvania Bulletin. *See* Complaint Ex. A, Pennsylvania Bulletin at 2 (51 Pa. B. at 7981). However, in the Complaint, PBA clarified that the Department's representation was incorrect. *See* Complaint at 4 n.1.

### c. Severability

"Pennsylvania public policy favors severability of statutes containing unconstitutional provisions." *Phantom Fireworks*, 198 A.3d at 1228. Having concluded that Section 304(a)(3) of the PCCA is unconstitutional, this Court must determine whether it can be severed from the PCCA.

Section 1925 of the Statutory Construction Act of 1972 (SCA), declares:

> The provisions of every statute shall be severable.[27] If any provision of any statute or the application thereof to any person or circumstance is held invalid, the remainder of the statute, and the application of such provision to other persons or circumstances, shall not be affected thereby, unless the court finds that the valid provisions of the statute are so essentially and inseparably connected with, and so depend upon, the void provision or application, that it cannot be presumed the General Assembly would have enacted the remaining valid provisions without the void one; or unless the court finds that the remaining valid provisions, standing alone, are incomplete and are incapable of being executed in accordance with the legislative intent.

1 Pa.C.S. § 1925; *see also Protz.* "The touchstone of legislative intent is whether, with the unconstitutional portion of a statute removed, the legislature would prefer what remains of the statute to no statute at all." *Phantom Fireworks*, 198 A.3d at 1229 (citation omitted). This Court is "also mindful that [it] should remove as little language as possible." *Id.*

In the instant case, Section 304(a)(3) of the PCCA directs:

> The [D]epartment shall promulgate regulations updating accessibility standards under Chapter 3 [(Uniform

---

[27] "Th[e Pennsylvania Supreme] Court has deemed the presumption in Section 1925 [of the SCA] so fundamental . . . , when confronted with a finding that a provision of a statute is invalid, that [it has] invoked Section 1925 [of the SCA] even where[, as here,] the parties failed to argue severability." *Stilp v. Commonwealth*, 905 A.2d 918, 970 (Pa. 2006).

Construction Code)] **by adopting by December 31 of the year of issuance of the accessibility provisions of the most recently published edition of the ICC codes and any other accessibility requirements which shall be specified in the regulations**, **or contained in or referenced by the** [UCC] **relating to persons with disabilities**.

35 P.S. § 7210.304(a)(3) (emphasis added). If this Court was to sever the unconstitutional language from the provision, only the phrase, "The [D]epartment shall promulgate regulations updating accessibility standards under Chapter 3 [(Uniform Construction Code)]," would remain. Such language is

> so essentially and inseparably connected with, and so depend[s] upon, the void provision[s] . . . , that it cannot be presumed the General Assembly would have enacted [it] without the void one; [and/]or . . . the court finds that the remaining valid provision[], standing alone, [is] incomplete and [is] incapable of being executed in accordance with the legislative intent[, and well[-]settled delegation restrictions].

1 Pa.C.S. § 1925. Because Section 304(a)(3) of the PCCA contains valid provisions that are inseparable from invalid provisions, it is unconstitutional in its entirety. It does not, however, render the remaining portions of the PCCA invalid and unenforceable. Under such circumstances, Section 304(a)(3) must be stricken from the PCCA and permanently enjoined from enforcement.[28] *See Robinson Twp.*; *see*

---

[28] "Under the void *ab initio* doctrine, a statute is held void in its entirety and 'treated as if it had never existed.' *Hawk v. Eldred T[wp.] B[d.] of Supervisors*, 983 A.2d 216, 218 n.1 (Pa. Cmwlth. 2009)." *Weidenhammer v. Workers' Comp. Appeal Bd. (Albright Coll.)*, 232 A.3d 986, 991-92 (Pa. Cmwlth. 2020). Therefore, "an unconstitutional statute is ineffective for any purpose," *Glen-Gery Corp. v. Zoning Hearing Bd. of Dover Twp.*, 907 A.2d 1033, 1043 (Pa. 2006), and cannot be enforced. Accordingly, the Department's claims that (1) PBA's failure to comment on the 2021 Accessibility Regulations is material to its request for a permanent injunction because its failure to object undermines any equitable rights it may have had, *see* Department Br. at 13, and (2) "PBA's speculative concerns about compliance with the 2021 Accessibility Regulations cannot . . . form the basis of a clear right to injunctive relief" because "it would render the policy [in Section 102 of the PCCA] meaningless[, and] would subject every subsequent amendment to nationally recognized standards to a petition for permanent injunction," are unpersuasive. Department Br. at 15 (quotation marks omitted).

*also Phantom Fireworks*. Consequently, the Department's Regulations promulgated pursuant to Section 304(a)(3) of the PCCA, are also unenforceable.

## Conclusion

For all of the above reasons, the Application is granted. This Court declares Section 304(a)(3) of the PCCA unconstitutional as violative of article II, section 1 of the Pennsylvania Constitution. Accordingly, the enforcement of Section 304(a)(3) of the PCCA, and the Department's 2021 Accessibility Regulations promulgated pursuant thereto, is enjoined.

_____
ANNE E. COVEY, Judge

28

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Pennsylvania Builders Association, :
                    Petitioner :
                             :
              v.             :
                             :
Department of Labor & Industry, :  No. 479 M.D. 2021
                    Respondent :

# O R D E R

AND NOW, this 26th day of October, 2022, Pennsylvania Builders Association's Application for Judgment on the Pleadings is GRANTED. Section 304(a)(3) of the Pennsylvania Construction Code Act (PCCA), Act of November 10, 1999, P.L. 491, *as amended*, 35 P.S. § 7210.304(a)(3), is hereby declared UNCONSTITUTIONAL as violative of article II, section 1 of the Pennsylvania Constitution, PA. CONST. art. II, § 1. The enforcement of Section 304(a)(3) of the PCCA, and the Department of Labor and Industry's Regulations promulgated pursuant thereto, is hereby ENJOINED.

_____
ANNE E. COVEY, Judge